INTERNATIONAL GENERAL ELECTRIC, PUERTO RICO, INC., demandante y recurrente, *v.* CONCRETE BUILDERS OF P.R., INC., y OTRO, demandados y recurridos.

*Número:* R-76-48 *Resuelto:* 19 de mayo de 1976

872

*Jorge F. Romany,* abogado de la recurrente; *Virgilio Méndez Cuesta,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

■ Nuestra jurisprudencia sigue un inconfundible cauce de la más amplia protección de los intereses de trabajadores y suplidores de materiales en la ejecución de contratos de construcción, dilatando mediante interpretación liberal la utilidad de la fianza prestada para asegurar el cumplimiento de dichos contratos. *Ferrer* v. *Alliance Company of P.R., Inc.,* 93 D.P.R. 1 (1966). En el vasto campo de la contratación y de la construcción jurídica espiritualista los sujetos de derecho no están restringidos por las formas ortodoxas ni por los lineamientos clásicos que integran los supuestos de consentimiento expreso o tácito, declaración de voluntad, cuasicontrato o disposición en beneficio de tercero. Coincide Puig Brutau con Nirk en que hay dos formas fundamentales de eficacia de la voluntad de negociación jurídica: la que funda la obligación en la voluntad declarada y la que debe fundarse en la fuerza de la confianza depositada en la declaración. *Fundamentos de Derecho Civil,* Tomo 1-2°, ed. 1959, pág. 86. Nuestro Código Civil, en sabia anticipación de que no podría deletrear una provisión justa en cada uno de sus artículos para el expansivo nacimiento y desarrollo de nuevas modalidades en las obligaciones, insufló acentuada vigencia al texto adoptado del Art. 6 del Código Civil Español(¹) que en el Art. 7 de Puerto Rico (31 L.P.R.A. sec. 7) ordena:

".　　·　　·　　　　·　　　·　　·　　·

"Cuando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la

---

(¹) Con lenguaje que recorta horizonte la concordante disposición en el Art. 6° del Código Civil Español reza: "Cuando no haya Ley exactamente aplicable al punto controvertido, se aplicará la costumbre del lugar y, en su defecto, los principios generales del Derecho."

razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos."

■ La recurrente International General Electric entregó materiales y equipo eléctrico por valor de $21,825.00 al contratista Concrete Builders of P.R., Inc., que fueron utilizados en la realización de una obra por ésta para la Cooperativa de Viviendas La Hacienda, construcción financiada por préstamo de $2,776,000 que a la Cooperativa facilitó la demandada y recurrida Berens Mortgage Bankers, Inc., garantizado su crédito con primera hipoteca y asegurado, además, por la Administración Federal de Hogares (F.H.A.). Para diciembre de 1971 en que se otorgaron los instrumentos de contratación, hacía diez años que regía en Puerto Rico una ley que exige el afianzamiento del pago a los obreros "y empleados del contratista de los salarios que devenguen en la obra." [2] Este requisito de fianza debía ser por tanto, además de exigencia ineludible, detalle de elemental conocimiento por todas las personas envueltas en la industria de la construcción bien como contratistas, suplidores de materiales o de crédito. Dentro de ese estado de derecho, el 17 de enero de 1972 un vicepresidente ejecutivo de la financiera Berens libró

[2] Esta Ley es la Núm. 111 de 22 de junio de 1961 (29 L.P.R.A. sec. 195 y ss.) y en lo pertinente exige:

Art. 1—"Todo contratista a cargo de la construcción, reconstrucción, ampliación, alteración o reparación de una obra, edificio o construcción cuyo costo estimado según se consigne en el permiso de construcción expedido por la Oficina de Permisos de la Junta de Planificación sea mayor de quince mil (15,000) dólares, prestará una fianza de pago (*payment bond*) a favor del Secretario de Trabajo, que será obligatoria y efectiva a partir de la fecha en que se dé comienzo a la obra."

Art. 2—"La fianza antes mencionada será prestada por el contratista en efectivo, cheque certificado o con la garantía de una compañía fiadora autorizada para hacer negocios en Puerto Rico, y dicha fianza de pago garantizará mancomunada y solidariamente con el contratista, hasta el límite de responsabilidad de la fianza, el pago a los obreros y empleados del contratista de los salarios que devenguen en la obra. El monto de esta fianza de pago no será menor del 10 por ciento del costo estimado de la obra en construcción."

constancia que entregó al contratista Concrete Builders y en la que expresa (³) hallarse en posesión de una carta de crédito que hace las veces de fianza de pago y cumplimiento, reiterando en un segundo párrafo que la referida carta de crédito sirve de fianza de *materiales* y *mano de obra* en el proyecto. La carta de Berens, como vemos, no limitó su referencia a salarios sino que incluyó *materiales*, yendo más allá de la garantía exigida por la Ley Núm. 111 de 1961 citada. El contratista presentó esta carta a General Electric y obtuvo los materiales cuyo pago rehusa Berens alegando que la misma era una comunicación privada entre ella y el contratista y que no creaba obligación de su parte para con el materialista. Como veremos, su intención o voluntad al suscribir y entregar la carta no cuentan en la adjudicación de esta controversia.

---

(³) El texto literal de este documento es el siguiente:

"January 17, 1972

"Concrete Builders of Puerto Rico, Inc.
Box 13098
Santurce, Puerto Rico
"*ATTENTION:* Mr. Rolando Díaz, President
"*REGARDING:* Cooperative de Vivienda la Hacienda
 FHA #056-44032-MAN

"Dear Mr. Díaz:
 "This is to verify that Berens Mortgage Bankers, Inc. holds in its possession a Letter of Credit in lieu of a Payment and Performance Bond, for the above cited project. This Letter of Credit satisfies the requirements of Berens Mortgage Bankers as well as the requirements of the United States Department of Housing and Urban Development.
 "Said Letter of Credit serves as assurance for payment of material and labor on this project.

 "Very truly yours,
 "BERENS MORTGAGE BANKERS, INC.

[Signed]

 "FRANK ELORRIAGA
 "EXECUTIVE VICE PRESIDENT"

■ Domina la situación factual de modo decisivo el hecho de no haberse quedado la carta o testimonio de Berens en el ámbito particular de sus negocios con el contratista, y de haber llegado hasta la recurrente, que conocido su texto, se desprendió de los materiales para la obra. En su mensaje escrito, Berens, aún sin quererlo, aseguró a General Electric que tenía en su poder suficiente garantía, tan buena como una fianza, para responder por el valor de dichos materiales, y los términos del documento eran dignos de la confianza del suplidor que ninguna razón tenía para dudar de la buena fe(4) de la representación que se le hacía. Berens causó un estado de derecho en el cual descansó General Electric. *Cf. Serra, Garabis & Co.* v. *Municipio,* 42 D.P.R. 468, 484 y ss. (1931); no puede ahora asumir conducta contradictoria a la que ganó la confianza de la recurrente. *Centro de Dependientes* v. *Montalvo,* 72 D.P.R. 408, 411 (1951); *Lausell Marxuach* v. *Díaz de Yáñez,* 103 D.P.R. 533 (1975); *Crossroads Dev. Corp.* v. *E.L.A.,* 103 D.P.R. 789 (1975). A nadie es lícito ir ni obrar contra sus propios actos.

■ En la construcción jurídica autónoma que da contorno a la norma de no ir contra los propios actos el efecto se produce de un modo objetivo, en el cual para nada cuenta la verdadera voluntad del autor de los actos. Se protege la confianza que estos actos suscitan en los terceros, porque venir

---

(4) "La buena fe, en el sentido que aquí importa, es la lealtad en el tratar, el proceder honrado y leal. Supone el guardar la fidelidad a la palabra dada y no defraudar la confianza, ni abusar de ella; supone un conducirse como cabe esperar de cuantos, con pensamiento honrado, intervienen en el tráfico como contratantes. Lo que se aspira a conseguir, se ha dicho, es que el desenvolvimiento de las relaciones jurídicas, el ejercicio de los derechos y el cumplimiento de las obligaciones, se produzca conforme a una serie de principios que la conciencia jurídica considera necesarios, aunque no hayan sido formulados. La buena fe, dice Betti, se presenta como un criterio hermenéutico a la vista del cual debe ser interpretado el contrato, y como un criterio de conducta conforme al cual deben ser cumplidas las obligaciones." Diez-Picazo, *La Doctrina de los Propios Actos,* Ed. 1963, pág. 157.

contra ellos constituiría obviamente un ataque a la buena
fe. Cuando se impide que una persona vaya contra sus
propios actos, se deja por completo de lado toda la doctrina
de declaración de voluntad para imponer directamente un
efecto jurídico. (⁵)

Analizando una situación de hecho como la del presente
caso, comenta Puig Brutau: "Lo declarado unilateralmente
puede haber influido en la conducta ajena y en la medida
en que haya sucedido así, puede ser necesario proteger la
confianza depositada en la apariencia. Si la relación jurí-
dica entre los intereses de dos personas no brota de lo
declarado por una y otra, puede brotar, no obstante, de la
conducta de ambas en su recíproca influencia. Como un
fundamental postulado de política jurídica aparece una vez
más la necesidad de proteger la confianza depositada en lo
aparentado por la declaración. El problema de si ha de pro-
ducir efectos una sola declaración de voluntad debe resol-
verse—como todos los problemas jurídicos—según criterios
de política jurídica que en este caso son los que aconsejan
proteger dicha confianza." *Fundamentos de Derecho Civil*,
Tomo 1-2°, Edición 1959, pág. 82.

 El contenido de la norma de que a nadie es lícito ir
contra los propios actos tiene fundamento y raíz en el prin-
cipio general de Derecho que ordena proceder de buena fe en
la vida jurídica. La conducta contradictoria no tiene lugar
en el campo del Derecho, y debe ser impedida. Este principio
tiene como paralelo en el Derecho inglés la doctrina de
*estoppel*. (⁶) El típico efecto mínimo que debe reconocerse

---

(⁵) Diez-Picazo, *La Doctrina de los Propios Actos*, pág. 151; Puig
Brutau, *Estudios de Derecho Comparado*, pág. 126 y ss.

(⁶) "Estoppel" significa etimológicamente estorbo, impedimento, obs-
táculo, detención. La caracterizó Lord Coke en su clásica frase: "because a
man's own act or acceptance stoppeth or closeth up his mouth to allege or
pleade the truth". Diez Picazo, *op. cit.*, págs. 62–3.

a los actos unilaterales (⁷) es que dejan fundado un *estoppel*. Este evita que el sujeto al que es imputable el acto unilateral pueda actuar en contradicción con su voluntad declarada.

■ Siendo este de "ir contra los propios actos" un principio general de Derecho, de validez universal, fluye espontáneamente del precepto del Art. 6 del Código Civil instruyendo que en defecto de Ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos. Su eficacia, su fuerza vinculante tienen vida y efecto propios, que van en protección de la confianza depositada en la apariencia, que es por extensión protección de un interés social o la consecución de un ideal de justicia. Los presupuestos (⁸) necesarios o elementos constitutivos para la aplicación de la norma jurídica de que nadie puede venir contra sus propios actos pueden resumirse así: (a) Una conducta determinada de un sujeto, (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás, y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada.

Berens está impedida por propio acto de rectificar, mediante conducta contradictoria, su acto unilateral que sirvió de puente, apuntalado en la confianza y la buena fe,

---

(⁷) "La voluntad o intención [de contratar] se manifiesta de manera tácita . . . . La característica más destacada que puede ser atribuida abstractamente a la declaración tácita consiste en que supondría una incongruencia o verdadera contradicción que determinado acto no llevara aparejada la posibilidad de confiar en él como desmostrativo de que existe la intención o voluntad de contratar." Puig Brutau, *op. cit.*, Tomo II-1°, págs. 82-3.

(⁸) Puig Brutau, *Estudios de Derecho Comparado—La Doctrina de los Actos Propios,* Edición 1951, pág. 112.

para la entrega de materiales por General Electric que de otro modo sufriría un claro perjuicio.

*Se expedirá el auto y se dictará sentencia acorde con lo resuelto, a tenor de la Regla 50 del Reglamento de este Tribunal. Revocada.*

El Juez Presidente Señor Trías Monge no participó.