EXCELSIOR CONSTRUCTION, INC. y CONSTRUCTORA MERO, INC., demandantes y recurrentes, *v.* COSTA ESTE DEVELOPMENT CORPORATION y CAGUAS FEDERAL SAVINGS AND LOAN ASSOCIATION, demandadas, y recurrida la última.

*Número:* R-80-473     *Resuelto:* 9 de diciembre de 1980

*A. J. Amadeo Murga,* abogado de los recurrentes; *José Guevara Fuentes* y *Rafael Rodríguez Ema,* abogados de la recurrida.

SENTENCIA

Habiendo comparecido la parte demandada mediante escrito de oposición y estando el Tribunal en condiciones de resolver sin más trámite, así lo hacemos en virtud de la Regla 50 de nuestro Reglamento.

Caguas Federal Savings and Loan Association financió un proyecto de urbanización de Costa Este Corp. Costa Este contrató a Excelsior Construction, Inc., para que realizara los trabajos de estructuras de hormigón y la labor de albañilería. Excelsior, a su vez, subcontrató dichas labores a Constructora Mero, Inc.

Los pagos del trabajo realizado por Excelsior los desembolsaba Caguas Federal directamente al contratista después que un inspector aprobado por la compañía financiadora certificaba los trabajos. Mientras se realizaba el desarrollo del proyecto, los pagos a Excelsior se retrasaron en la cantidad de $84,312.36 y como consecuencia de dicho retraso, se paralizó todo trabajo. Por dicha razón, el 31 de diciembre de 1976 se celebró una reunión entre representantes de Excelsior, Costa Este y Caguas Federal. Mediante acuerdo por escrito, firmado por todos los comparecientes, al que se hace referencia como carta-convenio, Caguas Federal:

(1) pagó $12,984.20 como abono a la deuda, reduciéndola a $71,328.16;

(2) acordó pagar la cantidad de $34,510 al llevarse a cabo la venta de 66 unidades de la urbanización;

(3) reconoció que existían fondos suficientes para los trabajos de albañilería pendientes de certificar; y

(4) consintió a que cedieran a Excelsior la cantidad de $36,818.16 que estaban en manos de Caguas Federal y que Caguas Federal retenía como parte del acuerdo de financiamiento existente entre ella y Costa Este.

Es importante notar que en dicho acuerdo de cesión no se condicionó el pago del retenido a contingencia contractual

alguna existente entre Caguas Federal y Costa Este ni se hizo referencia a limitación alguna al pago. Por el contrario, el acuerdo le imponía el deber a Caguas Federal de hacer el pago directamente a Excelsior.

Al final de dicho escrito, el representante de Caguas Federal firmó haciendo constar que, "De acuerdo a lo solicitado por Excelsior Construction, Inc. y aceptado por Costa Este Dev., nos damos por notificados, y *estamos conformes para hacer cumplir* lo establecido en esta *carta-convenio*". (Énfasis nuestro.)

Habiéndose acordado lo anterior, Excelsior y Mero reanudaron sus labores en el proyecto. Sin embargo, poco después Caguas Federal dejó de pagar las certificaciones. Adujo que se habían agotado los fondos bajo el contrato de financiamiento existente entre Costa Este y Caguas Federal. Ante el incumplimiento de Caguas, quien había asegurado la disponibilidad de fondos, Excelsior dejó de trabajar en el proyecto, habiéndose incrementado la cantidad adeudada a ella a $75,715.73.

El proyecto estuvo detenido por 15 meses y Caguas Federal ejecutó una hipoteca que tenía sobre el mismo, convirtiéndose en dueña. Durante ese período, el retenido cedido a Excelsior fue utilizado por Caguas Federal para pagarle a guardias de seguridad empleados en el proyecto abandonado, y pagarle $1,000 mensuales como sueldo al presidente de Costa Este.

El 6 de marzo de 1979, Excelsior y Constructora Mero demandaron a Costa Este y a Caguas Federal en cobro de dinero y daños. Dicha demanda fue desestimada por el tribunal recurrido.

Recurren los demandantes y alegan que incidió el tribunal de instancia al no reconocer que el retenido cedido a Excelsior con el consentimiento de Caguas Federal no se podía utilizar para otros fines que el pago de su acreencia y que Caguas Federal estaba impedida de negar el pago por trabajo

realizado en el proyecto, cuando ella reconoció y manifestó tener fondos suficientes para el pago de certificaciones pendientes. Estamos de acuerdo en que incidió el tribunal a quo.

El contrato celebrado entre Caguas Federal, Excelsior, Inc. y Costa Este el 31 de diciembre de 1976, tuvo el efecto de variar los términos del contrato de financiamiento en cuanto al uso que se le iba a dar al retenido y sobrantes en manos de Caguas Federal. Mediante dicho contrato, Caguas Federal, poseedora de la garantía que representaba el retenido, consintió que se destinara su importe al pago de la acreencia de Excelsior por trabajo hecho en el proyecto. Desde ese momento, el retenido dejó de ser una garantía para la terminación del proyecto y se designó para el pago de lo debido a Excelsior, como condición para que Excelsior continuara trabajando en el proyecto.[1] Por dicha razón, al incumplir Costa Este, el retenido no se podía utilizar para el pago de guardianes y el sueldo de su presidente. El propio Vice-Presidente de Caguas Federal, Sr. Víctor Kareh Gitane, admitió en su deposición que $10,000 pagados a Excelsior como parte del acuerdo logrado el 31 de diciembre de 1976 *provenía del retenido*. Demuestra este acto la intención de Caguas Federal de no sujetar el pago del retenido a la contingencia de que se finalizara la obra.

Por otra parte, Caguas Federal causó la paralización del proyecto al rehusar pagar las certificaciones por la razón de que se habían agotado los fondos bajo el contrato de financiamiento. Sin embargo, ella había representado a los demandantes en su acuerdo de 31 de diciembre de 1976 que existían fondos suficientes para pagar las certificaciones pendientes. Caguas Federal indujo a los demandantes a continuar realizando labores en el proyecto y posteriormente incumplió con

---

[1] No es de aplicación lo dispuesto en el caso de *R. Román & Cía.* v. *J. Negrón Crespo, Inc.*, 109 D.P.R. 26 (1979), pues dicha decisión tiene que ver con la acción directa bajo el Art. 1489 del Código Civil, controversia que no está planteada en este recurso.

el acuerdo logrado entre todas las partes. Si era verdad que las cantidades del préstamo se habían agotado o estaban por agotarse, no se explica que indujera a la parte demandante a creer lo contrario. Es de aplicación la doctrina esbozada en el caso de *Int. General Electric* v. *Concrete Builders*, 104 D.P.R. 871 (1976), que impide a Caguas Federal ir en contra de sus propios actos.

Se expide el auto, se revoca la sentencia recurrida y en su lugar se declara con lugar la demanda y se condena a Caguas Federal a pagar a los recurrentes la cantidad de $75,715.73 más las costas.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario. El Juez Asociado Señor Díaz Cruz disintió en voto separado al cual se une el Juez Presidente Señor Trías Monge. Los Jueces Asociados Señores Rigau y Negrón García se inhibieron. El Juez Asociado Señor Martín no intervino.

(Fdo.) Ernesto L. Chiesa

*Secretario*

—O—

Voto disidente del Juez Asociado Señor Díaz Cruz al cual se une el Juez Presidente Señor Trías Monge.

San Juan, Puerto Rico, a 9 de diciembre de 1980

Contrario a lo resuelto por este Tribunal en *El Toro Electric Corp.* v. *Zayas*, 106 D.P.R. 98 (1977), la sentencia le impone responsabilidad al banco acreedor y financiador del proyecto por obras y servicios que a la constructora dueña del mismo suplió un contratista. Se llega a esta conclusión bajo la premisa de que una llamada carta-convenio de 31 diciembre, 1976 entre la dueña y deudora hipotecaria Costa Este Development Corp., y su contratista de hormigón y albañilería Excelsior Construction, Inc., sobre cesión por aquélla a ésta de sobrantes y retenidos en el contrato de financiamiento de Costa Este con Caguas Federal Savings & Loan Ass'n y que

ésta suscribió *dándose por notificada* y dispuesta a hacer cumplir la cesión, constituye una modificación del contrato de financiamiento entre Caguas Federal y Costa Este Development Corporation, y una garantía del Banco al contratista del valor de sus obras y servicios, mediante representación incondicional como en *Int. General Electric* v. *Concrete Builders*, 104 D.P.R. 871 (1976).

Sobre este aspecto crítico de la relación contractual entre las partes en litigio, el juez sentenciador en determinaciones de hecho derivadas de evidencia oral cuya estimación no se impugna por las recurrentes, y bien fundadas en los contratos escritos admitidos en evidencia, concluyó lo siguiente:

7. "Caguas Federal" no fue parte ni intervino en forma alguna en ninguno de los contratos entre "Costa Este", "Excelsior" y "Mero", [subcontratista] mencionadas anteriormente.

8. Comenzadas las obras de construcción por "Costa Este", "Excelsior" y "Mero", posteriormente se paralizaron.

9. La paralización de las obras fue con motivo de que "Costa Este" adeudaba a "Excelsior" al momento de la paralización las sumas de $49,649.91 del contrato de hormigón y $21,678.25 por concepto del contrato de albañilería por lo que los antes dichos subcontratistas no continuaron trabajando en el proyecto.

10. Paralizadas las obras de construcción del proyecto por algún tiempo, el día 31 de diciembre de 1976 "Costa Este" y "Excelsior" prepararon y firmaron un documento en el cual "Costa Este" reconoce adeudar a "Excelsior" las cantidades de dinero mencionadas en el párrafo 9no. de estas determinaciones. (Exhibit 7 parte demandante.)

11. En dicho documento de fecha 31 de diciembre de 1976 acordó "Costa Este" ceder a favor de "Excelsior" el retenido de 10% en poder de "Caguas Federal" así como los sobrantes de dinero de "Costa Este", en pago a "Excelsior" de la deuda antes mencionada.

12. El retenido en poder de "Caguas Federal" perteneciente a "Costa Este" era el que "Caguas Federal" realizaba de acuerdo al contrato de financiamiento antes mencionado.

13. El convenio de financiamiento entre "Caguas Federal" y "Costa Este" disponía que el retenido del 10% no era líquido ni

exigible hasta tanto "Costa Este" obtuviere los permisos de uso de las viviendas construidas.

14. "Caguas Federal" firmó el documento de fecha 31 de diciembre de 1976 dándose por notificado y para hacer cumplir lo dispuesto en cuanto a la cesión a "Excelsior" del sobrante y el retenido y a entregar a "Excelsior" aquello que resultara líquido y exigible una vez se finalizaran las obras de construcción, se obtuvieran los permisos de uso y se firmen las escrituras de venta de las propiedades.

15. Firmado el convenio de fecha 31 de diciembre de 1976 "Excelsior" acordó continuar la labor de construcción y así lo hizo.

16. Al reanudarse la construcción en el proyecto "Caguas Federal" continuó realizando el desembolso del producto del financiamiento concedido a "Costa Este" según el convenio de financiamiento entre "Costa Este" y "Caguas Federal" de fecha 23 de diciembre de 1972 con la diferencia que "Caguas Federal", de los sobrantes, si alguno, de cada certificación sometida por "Costa Este" la utilizaba para abonar o amortiguar la deuda de "Costa Este" con "Excelsior" según lo pactado en el documento de fecha 31 de diciembre de 1976 entre "Costa Este" y "Excelsior". (Exhibits 8, 9, 10 y 11 parte demandante.)

17. Las obras de construcción en el proyecto se paralizaron en una segunda ocasión por diferencias que surgen entre "Excelsior" y "Costa Este" quedando el proyecto paralizado y desierto.

18. Abandonado y desierto el proyecto, "Costa Este" solicita del "Caguas Federal", mediante certificaciones sometidas, desembolsos parciales del retenido en poder del "Caguas Federal" para el pago de las nóminas de los guardias de seguridad del proyecto para mantener el mismo vigilado y así evitar que ocurrieren actos vandálicos en perjuicio del proyecto. (Exhibits 12, 13 y 14 parte demandante.)

19. "Caguas Federal" pagó las certificaciones de nóminas de los guardias de seguridad del proyecto sometidos por "Costa Este".

20. "Costa Este" incumplió los términos y condiciones del contrato de financiamiento con "Caguas Federal" de fecha 23 de septiembre de 1972 por lo que "Caguas Federal" procedió a ejecutar dicho proyecto mediante el correspondiente proceso de

Ejecución de Hipoteca por la vía ordinaria en el caso Civil número CS-78-2280 Tribunal Superior de Puerto Rico, Sala de Humacao, adjudicándose dicho proyecto en Venta Judicial según la escritura número 1000 de fecha 21 de diciembre de 1978 ante el notario Rafael Rodríguez Ema. (Exhibit I parte demandada.)

21. "Caguas Federal" no es responsable por las sumas adeudadas por "Costa Este" a "Excelsior" ya que al incumplir "Costa Este" con el contrato de financiamiento con "Caguas Federal" y no producir los permisos de usos ni firmarse las escrituras de venta de las propiedades, el retenido de "Costa Este" en poder de "Caguas Federal" si alguno, no se convirtió en líquido ni exigible siendo éste utilizado para el pago de los guardias de seguridad en protección del proyecto hasta que el "Caguas Federal" ejecutó el mismo.

22. Antes de la ejecución del proyecto por "Caguas Federal" y estando el mismo aún en poder de "Costa Este" se firmaron dos cierres de las viviendas construidas procediendo "Caguas Federal" a expedir cheque a favor de "Costa Este" y "Excelsior" según lo pactado en el convenio de 31 de diciembre de 1976 y "Excelsior" se negó a aceptar el mismo.

Que esta cesión por Costa Este a la recurrente Excelsior, aprobada por Caguas Federal se hizo cuando no se conocía el monto de sobrantes y retenido en poder del Banco, toda vez que la liquidación y determinación de los mismos necesariamente había de esperar a la terminación de la obra, resulta evidente del texto de la llamada carta-convenio de 31 diciembre, 1976 sometida por Excelsior y en la que a modo de cooperación para solucionar el problema económico de Costa Este, propone y acuerda que su acreencia de $71,328.16 [1] se pague con $12,984.20 que dice ya recibidos, y "recibir *al momento del cierre y firma* de las escrituras de cada caso (venta de las 66 unidades), la proporción que resulta de lo adeudado por concepto de retenidos en nuestro contrato de hormigones como sigue:

$ 34,510.00    =    $580.00 al cierre del primer caso

---

[1] La demanda es por $75,715.

66 unidades    =    $522.00 al cierre de cada uno de 65 casos restantes". (Énfasis nuestro.)

Se repite la condición suspensiva predicada en la venta de casas (cierre) en el párrafo 6 de la misma carta cesión así:

Que de acuerdo con este convenio, estimamos que los trabajos que nos restan por ejecutar en el Proyecto COSTA ESTE, podrá terminarse en un tiempo aproximado de 45 días laborables y que estamos en disposición de llevar a cabo esos trabajos en coordinación con su oficina del Proyecto, o sea, ejecutando en orden preferente, lo que Uds. estimen más necesario *a los efectos de acelerar la entrega y venta de las casas.* (Énfasis nuestro.)

Responde toda esta supeditación voluntaria de pagos por Excelsior a la entrega de unidades aptas con permiso de uso al Art. 10(B)(6) del contrato de financiamiento entre Caguas Federal y Costa Este:

B.  No permanent loan shall be made to buyers unless:

.    .    .    .    .    .    .    .

6. The construction has been completed in substantial conformity with the plans and specifications submitted and final approval of all pertinent government agencies has been obtained as evidenced by the *use permit.* (Énfasis nuestro.)

La evidencia oral que mereció crédito al tribunal y cuya apreciación no se cuestiona, se ciñe a la realidad contractual que hemos descrito. No aparece en parte alguna de la prueba hecha en sala de justicia que hubiese una variación de contrato (o novación como antes se dijo), ni mucho menos liquidación de haberes retenidos antes de entregarse las casas con permiso de uso. La diáfana expresión de la voluntad de las partes no deja lugar para adjudicar sus derechos por implicaciones y silogismos. En este caso huelga la interpretación. Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471; *Luce & Co.* v. *Junta Rel. Trabajo,* 86 D.P.R. 425 (1962); *National City Bank* v. *Llonín,* 41 D.P.R. 163 (1930).

La sentencia recurrida simplemente reconoce y da eficacia a lo pactado, por lo que debe ser confirmada.

