Broco Oliveras, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
En el presente recurso se impugna una orden del Tribunal de Primera Instancia, Sala Superior de San Juan, dictada el 31 de octubre de 1995 y notificada con fecha de 6 de noviembre de 1995, que ordenó al peticionario someterse a una prueba de paternidad conocida como "DNA Locus Multiple". Por entender que el tribunal de instancia no abusó de su discreción al ordenar la prueba, procede que se deniegue el presente recurso.
I
La Sra. Melba Dávila Rodríguez, recurrida, presentó el 9 de agosto de 1995 una demanda de filiación y alimentos en contra de Miguel A. Monge Osorio, peticionario. La recurrida alega en la referida demanda que el peticionario es padre de la niña Tiara Dávila, quien nació el 15 de mayo de 1991.
El peticionario aduce en su recurso que en diciembre de 1991 se condujo una prueba genética sanguínea sobre la paternidad de la niña que arrojó un resultado de exclusión del peticionario como posible padre. Asegura el peticionario que antes de realizarse esa prueba las partes habían acordado acatar el resultado.
El peticionario contestó la demanda negando la paternidad y presentó la defensa de cosa juzgada e impedimento por actos propios.
Mediante moción de 9 de octubre de 1995, la recurrida solicitó del tribunal de instancia que se ordenara al peticionario someterse a la prueba DNA Locus Multiple. El peticionario presentó oposición alegando: que no se ha establecido que la prueba realizada no era confiable; que el costo de la misma fue pagado por él; que hubo un acuerdo de acatar el resultado de esa prueba; y que no se ha demostrado la mayor confiabilidad de la nueva prueba.
La recurrida, en apoyo de su solicitud, sostuvo que la prueba DNA Locus Multiple es el resultado de descubrimientos científicos con posterioridad a los conocimientos sobre los cuales se basa la *1345 praeba anterior.
El tribunal de instancia en la referida orden de 31 octubre de 1995, ordenó al peticionario a someterse a la prueba DNA Locus Multiple. Inconforme con ese dictamen, el peticionario presentó el presente recurso. Le atribuye al tribunal de instancia la comisión del siguiente error:
"Erró el Tribunal a quo al ordenar al peticionario a someterse a una prueba sanguínea para determinar sobre la paternidad de la menor cuando la prueba sanguínea se condujo en 1991 y excluyó la paternidad del peticionario, sin que la parte demandante haya dado [u] ofrecido evidencia de que este resultado deba rechazarse o dado razones por las cuales no deba aplicarse la norma establecida en Ortiz v. Peña, 108 D.P.R. 458 (1979)."
II
El peticionario aduce en el presente recurso que "existió un convenio mediante el cual la prueba realizada en 1991 adjudicaría el hecho de la paternidad, por lo que constituye cosa juzgada su pretensión de realizar la prueba nuevamente."
La doctrina de cosa juzgada vigente en Puerto Rico requiere que, para darle efecto a la presunción de cosa juzgada en un pleito subsiguiente, exista la más perfecta identidad entre las cosas, las causas, las personas litigantes y la calidad en que lo fueron en el caso resuelto por la sentencia y aquel en que dicha defensa afirmativa sea invocada. Rodríguez Rodríguez v. Colberg Comas, Op. de 30 de junio de 1992, 92 J.T.S. 102; Lausell Marxuach v. Díaz de Yañez, 103 D.P.R. 533 (1975); Pagán Hernández v. U.P.R., 107 D.P.R. 721 (1978).
La doctrina de impedimento colateral por sentencia es una modalidad de la doctrina de cosa juzgada. La doctrina de impedimento colateral tiene el propósito de proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia. aaaaRodríguez Rodríguez v. Colberg Comas, supra.
Las doctrinas de cosa juzgada e impedimento colateral por sentencia son inaplicables a la controversia que nos ocupa. En el presente caso no ha mediado previa determinación judicial de hechos en controversia que impida la realización de la prueba ordenada. Como cuestión de hecho la orden sobre la prueba DNA Locus Multiple responde a la primera solicitud que se le hace al tribunal de instancia sobre ese asunto. El tribunal de instancia, en el manejo del caso, tampoco ha emitido órdenes anteriores que sean incompatibles con la orden que nos ocupa.
La doctrina de que a nadie le es lícito ir contra sus propios actos no es en el presente caso oponible a la recurrida para impedir la prueba ordenada. Esta doctrina requeriría que el peticionario sufriera un perjuicio al confiar en la conducta anterior de la recurrida. International General Electric v. Concrete Builders, 104 D.P.R. 871, 878 (1976); Meléndez Piñero v. Levitt & Sons of P.R. Inc., Op. de 13 de diciembre de 1991. 91 J.T.S. 95. No es perjudicial al peticionario la realización de la prueba DNA Locus Multiple la cual, de excluirle como posible padre de la niña, apoyaría su posición de que no es el padre.
Por su tangencia con el planteamiento del alegado acuerdo de que la prueba genética realizada adjudicó la cuestión sobre la paternidad, discutimos el contrato de transacción.
El Artículo 1709 del Código Civil, 31 L.P.R.A. see. 4821, define el contrato de transacción como sigue:

"La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo; cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado."

Asumiendo la validez del acuerdo antes mencionado, aunque se refiere a la cuestión central de paternidad, no se llevó a cabo con el entendido de que impedía futura litigación entre las partes sobre ese asunto.
Más determinante aún es la falta de obligatoriedad del acuerdo, como impedimento para futura *1346 litigación, resultante de la prohibición del Artículo 1713, 31 L.P.R.A. see. 4825, que no permite que se transija sobre el estado civil de las personas, sobre las cuestiones matrimoniales y sobre los alimentos futuros.
Concluimos, por lo tanto, que el referido acuerdo no puede esgrimirse para impedir la prueba DNA Locus Multiple.
Ill
El peticionario hace hincapié en la confiabilidad de la prueba realizada en 1991 y cita lo resuelto en Ortiz v. Peña, 108 D.P.R. 458, 462-463 (1979) en lo que se refiere al carácter concluyente del resultado de la prueba de sangre para determinar que una persona no es el padre de una criatura.
La confiabilidad de una prueba sanguínea de paternidad depende además de que se hayan observado las siguientes precauciones: que no haya habido error en la identificación de las muestras, que se hayan observado rigurosamente los procedimientos científicos, que el personal de laboratorio sea competente y que los peritos que evalúan los resultados y emiten opinión posean reconocida capacidad.
Aunque reconocemos que la recurrida no ha aportado elementos de juicio para demostrar la falta - de confiabilidad de la prueba de 1991, ésta insiste en que el peticionario es el padre de la niña. Además, asumiendo para fines de análisis que la prueba de 1991 no fuera confiable por inobservancia de los métodos y. precauciones, que la misma conlleva, la tarea de la recurrida para demostrarlo seríá prácticamente, imposible en ausencia de costosos peritos que probablemente sean difíciles de-conseguir. ..
La cuestión.de la paternidad es un asunto revestido de un alto interés publico. En Puerto Rico existe una política pública a favor de que se reconozca a todos los fines legales la relación biológica entre padres e hijos; se trata de hacer valer el derecho a la igualdad entreios hijos nacidos en Puerto Rico, derechos que los garantiza nuestra Constitución. Rivera Pérez v. León, Op. de 30 de junio de 1995, 95 J.T.S. 93, La misma requiere la máxima certeza ya que la relación paterno-filial tiene consecuencias para toda la vida para las' personas envueltas.
No vemos conio una segunda prueba, que es científicamente más adelantada y confiable, puede perjudicar al peticionario. Como expresamos anteriormente, si la prueba DNA Locus Multiple lo excluye, contará en el juicio con una segunda prueba que podrá oponer a la reclamación de la recurrida.
En Ortiz v. Peña, supra, caso citado por el peticionario sobre el carácter concluyente de la prueba de-sangre, se presentaron'dos análisis llevados a cabo por dos laboratorios independientes para . demostrar que Juan Francisco Peña no'éfa él padre el niño Eduardo Ortiz. •
ÍV
Entendemos que no es necesario discutir el planteamiento del peticionario con respecto a la . protección contra ataques abusivos a su intimidad. Esto es así debido a que el Tribunal Supremo ha dispuesto que a moción de parte oportunamente presentada, se deberá ordenar los exámenes de sangre cuando la paternidad es un hecho pertinente en el pleito. Ortiz v. Peña, supra.
No encontramos en la actuación del tribunal de instancia ningún indicio de error, perjuicio o parcialidad.
V
Por las razones antes expresadas, se deniega la expedición del auto de certiorari.
Lo ordenó el Tribunal y lo certifica la Secretaria General.
María de la C. González Cruz
Secretaria General