ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| ASOCIACIÓN RECREATIVA Y DE RESIDENTES VILLA DEL MAR COCO BEACH INC.<br><br>Apelante<br><br>v.<br><br>JAIME NOEL SÁNCHEZ RODRÍGUEZ<br><br>Apelado | KLAN202400841 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.: RG2022CV00118<br><br>Sobre: Cobro de Dinero |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 14 de noviembre de 2024.

El 11 de septiembre de 2024 la Asociación Recreativa y de Residentes Villa del Mar Coco Beach, Inc. (Asociación o Apelante) presentó un recurso de Apelación. El apelado es el señor Jaime Noel Sánchez Rodríguez (Sánchez Rodríguez o Apelado). La Apelante nos solicita que revoquemos la *Sentencia* dictada el 20 de junio de 2024, y notificada el 21 de junio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Río Grande (TPI). Mediante esa *Sentencia*, el TPI ordenó al Apelado pagar a la Asociación la suma de $10,710.72, más los intereses desde dictada la *Sentencia*.

Por los fundamentos que expondremos, se *Confirma* la *Sentencia* apelada.

## I.

El 10 de julio de 2018, el señor Jaime Noel Sánchez Rodríguez se convirtió en dueño de una propiedad ubicada en la Urbanización Villas de Mar Coco Beach en Río Grande, Puerto Rico.

En ese momento, aceptó la obligación de pagar una cuota de mantenimiento para los gastos comunes de la urbanización por la suma de cincuenta (50) dólares mensuales.

El 16 de agosto de 2019, la Asociación y el Apelado suscribieron un acuerdo para el pago de una deuda por concepto de cuotas de mantenimiento, que luego fue reiterado el 10 de septiembre de 2019. En este se estableció la suma de $8,985.00 como el principal de la deuda. El Apelado se comprometió a que, a partir de septiembre de 2019, emitiría un pago de $50.00 para la cuota de mantenimiento, más la suma de $150.00 para abonar al principal. En el acuerdo inicial, que luego fue ratificado, el Apelado expresamente dispuso que el plan de pago sería "hasta que se salde la deuda sin intereses ni penalidades", y que se comprometía a "adelantar pagos mayores en algunos meses en el año". Además, las partes estipularon que el acuerdo sería nulo si se incumplía con dichos pagos.

Así las cosas, del expediente surge que Sánchez Rodríguez no realizó los pagos acordados en septiembre, octubre, ni noviembre de 2019. No fue hasta el mes de diciembre de 2019, que el Apelado hizo un pago de $600.00. Este fue aceptado por la Asociación y acreditado a la totalidad del pago principal, conforme a la certificación de deuda. A partir de ese momento, el Apelado no volvió a efectuar un pago adicional con relación a la suma adeudada, ni con las mensualidades corrientes, hasta el 31 de octubre de 2021. No obstante, surge del expediente que el Apelado hizo gestiones para reinstalar su plan de pago desde mayo de 2021, y ofreció saldar la totalidad del principal acordado para pagarlo de inmediato. Por su parte, la Asociación nunca emitió una decisión o informó al Apelado que había dejado sin

efecto el acuerdo, hasta que llevó a cabo gestiones de cobro en octubre de 2021.

El 23 de marzo de 2022, la Apelante presentó una demanda en cobro de dinero. Alegó que, al 30 de octubre de 2021, el Apelado adeudaba la cantidad de $59,367.47 por concepto de cuotas de mantenimiento. Indicó que dicha deuda estaba vencida, y era líquida y exigible. Arguyó que el Apelado recibía rentas por el alquiler de la propiedad en cuestión, así que solicitó el embargo preventivo de la totalidad de dichas rentas. Además, solicitó al TPI que ordenara al Apelado a pagar $59,367.47 más los intereses, así como honorarios de abogado por una cantidad no menor de $8,000.00.

Por su parte, el Apelado presentó su *Contestación a Demanda* y *Reconvención* el 15 de julio de 2022. Planteó que él ganaba su sustento operando un negocio de transporte y excursiones para turistas, y que a consecuencia de la pandemia de COVID-19, se vio impedido financieramente de poder continuar dando pleno cumplimiento a su obligación de pago, según lo estipulado. Arguyó que, por circunstancias extraordinarias, aplicaba la doctrina de *rebus sic stantibus* y procedía la revisión del contrato. Añadió que hizo las gestiones para notificarle a la Asociación sobre la situación, pero que esta hizo caso omiso. A su vez, indicó que, tras recuperarse económicamente en el año 2021, intentó restablecer su plan de pago, pero la Apelante se negó a permitir que saldara su deuda. Además, sostuvo que la Apelante estaba impedida por sus propios actos. Solicitó al TPI que ordenara el cumplimiento específico e inmediato del contrato de plan de pago, e informó que estaba en disposición de saldarlo en su totalidad para culminar el litigio.

La Sala de Instancia celebró el juicio en su fondo. Allí admitió prueba documental y escuchó el testimonio de la Presidenta de la Asociación demandante y del señor Sánchez Rodríguez. A base de la credibilidad que le merecieron los testigos y la prueba analizada, el 20 de junio de 2024, dictó *Sentencia,* notificada a las partes el 21 de junio de 2024. En esta resolvió que el Apelado adeudaba las cuotas mensuales de $50.00, más los intereses y penalidades, desde diciembre de 2019 a octubre de 2021, al igual que el principal de $8,385.00. Determinó que la deuda incontrovertida ascendía a $10,609.48 más los intereses que dicha suma generara a partir del dictamen. En cuanto al plan de pago, resolvió que procedía aplicar la doctrina de *rebus sic stantibus* a los efectos de que se saldara en su totalidad el principal adeudado de forma inmediata. Así las cosas, ordenó al Apelado pagar a la Asociación la suma de $10,710.72, más los intereses desde dictada la *Sentencia*.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 10 de septiembre de 2024, la Apelante compareció ante nos mediante el presente recurso de apelación. En este expuso los siguientes señalamientos de error:

A. Erró el Tribunal de Primera Instancia al aplicar la defensa excepcional de *rebus sic stantibus* por no haberse demostrado que el incumplimiento contractual fue consecuencia de la pandemia de COVID 19 y los terremotos de 2020.

B. Erró el Tribunal de Primera Instancia al aplicar la defensa excepcional de *rebus sic stantibus* por no cumplirse con los requisitos y ante la aplicabilidad de los artículos 1259 y 1260 del Código Civil de Puerto Rico y estar prescrita la misma.

El Apelado presentó su alegato. Con el beneficio de los escritos de ambas partes, resolvemos.

## II.

### A. Los Contratos

La controversia antes nos surge a raíz de un acuerdo efectuado entre las partes antes de que entrara en vigor el Código Civil de Puerto Rico de 2020, por lo que es de aplicación el Código Civil de Puerto Rico de 1930.

Este dispone que "[e]l contrato existe desde que una o varias personas consienten en obligarse respecto de unas u otras, a dar alguna cosa o prestar algún servicio". Artículo 1206 del Código Civil, 31 LPRA sec. 3371. Se trata de un negocio jurídico bilateral y patrimonial cuyo ámbito de aplicación puede recaer en la creación de una obligación, como en la modificación o extinción de una obligación ya existente. La perfección del contrato opera cuando concurre el consentimiento de las partes con el objeto y la causa, salvo que la ley imponga de una forma solemne para su perfección. Artículo 1210 del Código Civil, 31 LPRA sec. 3375. Es decir, para que el contrato sea eficaz va a requerir los elementos esenciales de consentimiento, objeto y causa. Artículo 1213 del Código Civil, 31 LPRA sec. 3391.

El ordenamiento contractual en nuestra jurisdicción está enmarcado en el principio de autonomía contractual y *pacta sunt servanda*. Es decir, los contratantes tienen amplia libertad para acordar las cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral, ni al orden público. Artículo 1207 del Código Civil, 31 LPRA sec. 3372. A su vez, estas obligaciones tienen fuerza de ley entre las partes contratantes, y deben cumplirse a tenor con estos. Artículo 1044 del Código Civil, 31 LPRA sec. 2994. Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de los expresamente pactado,

sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Artículo 1210, 31 LPRA sec. 3375. El Tribunal Supremo nos indica que la buena fe supone guardar fidelidad a la palabra dada y no defraudar la confianza, ni abusar de ella. SLG Silva-Alicea v. Boquerón Resort, 186 DPR 532, 547 (2012); Colón v. Glamorous Nails, 167 DPR 33, 45 (2006).

### B. La Doctrina de *Rebus Sic Stantibus*

Un contrato debidamente perfeccionado puede ser objeto de modificación por los tribunales bajo ciertas circunstancias, pues estos tienen la facultad de resolver conforme a equidad. Artículo 7 del Código Civil, 31 LPRA sec. 7; Integrand Assurance v. CODECO et al., 185 DPR 146, 174-175 (2012). Uno de los remedios en equidad que una parte en un contrato puede reclamar es la cláusula o condición *rebus sic stantibus*. Oriental Bank v. Perapi, 192 DPR 7, 16 (2014); BPPR v. Sucn. Talavera, 174 DPR 686, 694 (2008).

La cláusula *rebus sic stantibus*, como fundamento para revisar los términos de un contrato, surge de diversos principios de la teoría general de las obligaciones y los contratos, tales como la buena fe, el abuso del derecho y la equidad contractual. Oriental Bank v. Perapi, *supra*; BPPR v. Sucn. Talavera, *supra*, pág. 694; Casera Foods, Inc. v. ELA, 108 DPR 850, 855 (1979). Esta doctrina "parte del supuesto que los contratos de tracto sucesivo o de cumplimiento aplazado obligan mientras no ocurran cambios importantes en el estado de hechos contemplado por las partes al momento de contratar". Íd.

Nuestro máximo foro ha establecido, por vía jurisprudencial, que los siguientes requisitos deben concurrir al momento de evaluar la procedencia de la cláusula *rebus sic stantibus*: (1) que

ocurra una circunstancia imprevisible como una cuestión de hecho dependiente de las condiciones que concurran en cada caso, lo cual es un requisito fundamental; (2) que el cumplimiento con las prestaciones del contrato sea extremadamente oneroso, lo cual también es una cuestión de hecho; (3) que no se trate de un contrato aleatorio o que haya un elemento de riesgo que sea determinante; (4) que ninguna de las partes haya incurrido en algún acto doloso; (5) que se trate de un contrato de tracto sucesivo o que esté referido a un momento futuro; (6) que la alteración de las circunstancias ocurran con posterioridad a la celebración del contrato y que presente un carácter de cierta permanencia, y (7) que una parte invoque la aplicación de la doctrina. Oriental Bank v. Perapi, *supra*, pág. 17; Casera Foods, Inc. v. ELA, *supra*, pág. 856.

Aunque se trata de un remedio excepcional, una vez se demuestra la concurrencia de todos los requisitos para su procedencia "el ámbito remedial del tribunal es amplísimo y flexible". Oriental Bank v. Perapi, *supra*, pág. 18; Casera Foods, Inc. v. ELA, *supra*, pág. 857. Entre los posibles remedios se incluyen, sin limitarse a ello y según las circunstancias de cada caso: la suspensión temporera de los efectos del contrato; su resolución o rescisión; la revisión de los precios; la suspensión o moratoria, y otros remedios que los tribunales estimen justos y equitativos. Íd. Sin embargo, el foro de última instancia ha resuelto que en ocasiones un contrato puede ser revisado por los tribunales mediante la aplicación de la cláusula *rebus sic stantibus* a pesar de que no concurran los siete (7) requisitos antes mencionados. BPPR v. Sucn. Talavera, *supra*, pág. 715.

No obstante, los tribunales deben tener presente en todo momento que, a pesar de que pueden surgir circunstancias que

ameriten la invocación de la cláusula *rebus sic stantibus*, "la obligatoriedad e irrevocabilidad del contrato es de suma importancia para la estabilidad de las negociaciones y las relaciones económicas". Oriental Bank v. Perapi, *supra*, págs. 19-20; BPPR v. Sucn. Talavera, *supra*, pág. 696. Por tales motivos, en todo caso en donde se contemple la aplicación excepcional de la norma, es un requisito *sine qua non* para su procedencia el que la circunstancia que altera el negocio sea realmente imprevisible. Oriental Bank v. Perapi, *supra*, pág. 20.

### C. La Doctrina de Actos Propios

La doctrina de actos propios es una norma que emana del concepto amplio de equidad contemplado en el Artículo 7 del Código Civil de 1930, *supra*. El precitado artículo establece que, "[c]uando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos".

En particular, esta doctrina procura que las personas no vayan en contra de sus propios actos, y que actúen de buena fe en el ejercicio de sus derechos y en el cumplimiento de las obligaciones en las que incurran en variadas relaciones jurídicas. Vivoni Farage v. Ortiz Carro, 179 DPR 990, 1010 (2010); Int. General Electric v. Concrete Builders, 104 DPR 871, 876-877 (1976).

Para que sea de aplicación la doctrina de los actos propios, deben reunirse los siguientes elementos: (a) una conducta determinada de un sujeto; (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás; y (c) que sea base de la confianza de otra parte que haya procedido

de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. Carmona Sánchez y otros v. Baloncesto Superior Nacional y otros, 2024 TSPR 65, 213 DPR ___ (2024); Alonso Piñero v. UNDARE, Inc., 199 DPR 32, 55-56 (2017); Vivoni Farage v. Ortiz Carro, *supra*, en las págs. 1010–11; Int. General Electric v. Concrete Builders, *supra*, en la pág. 878.

Es decir, en virtud de esta doctrina, un litigante está impedido de adoptar una actitud que sea contradictoria con una conducta anterior, sobre la cual la parte perjudicada ha confiado, y ello sin importar la verdadera intención de la parte que genera esa confianza. Pardo v. Sucn. Stella, 145 DPR 816, 829 (1998).

### III.

Atenderemos en primer orden, el segundo señalamiento de error relacionado a la prescripción de la defensa excepcional de *rebus sic stantibus*. La Apelante, en síntesis, alegó que el foro primario erró al aplicar la defensa de *rebus sic stantibus*, según los Artículos 1259 y 1260 del Código Civil de Puerto Rico de 2020. Sin embargo, en los hechos que presenta esta causa, podemos constatar que el acuerdo entre las partes fue suscrito el 16 de agosto de 2019, y reiterado el 10 de septiembre de 2019. Es decir, el Código Civil de 2020 no estaba vigente al momento en que se perfeccionó el contrato. Por lo tanto, carece de méritos el segundo señalamiento de error de la Apelante.

En cuanto al primer señalamiento de error, la Apelante sostiene que erró el TPI al aplicar la defensa de *rebus sic stantibus*, por el Apelado no demostrar que el incumplimiento contractual fue consecuencia de los terremotos del 2020 y el COVID-19. Plantea que el foro recurrido incidió al concluir que aplicaba la defensa de *rebus sic stantibus* con tan solo tomar

conocimiento judicial del deterioro financiero general del país, y sin recibir prueba de que las finanzas personales del Apelado se vieron afectadas al nivel de no poder cumplir con el pago de $200.00 mensuales. A su vez, arguye que el incumplimiento con el contrato se dio en septiembre de 2019, cuando el Apelado no realizó el primer pago acordado, por lo que no aplica la defensa, ya que para esa fecha no existía el COVID-19 y no habían ocurrido los terremotos.

El Apelado, por su parte, adujo que el demandante no presentó prueba de que hubiera determinado dejar sin efecto el acuerdo de pago que suscribió, más aún, cuando en diciembre de 2019 el demandante aceptó el pago de $600.00 sin reparo. Sostuvo que, en el mes de mayo de 2021, intentó retomar el plan de pago acordado para saldar el principal adeudado. Mencionó que luego de eso, en octubre de 2021, fue que la Asociación le remitió el cobro de la totalidad de la alegada deuda. Aseveró que el Foro Primario determinó correctamente que aplicaba la doctrina de *Rebus Sic Stantibus*, habida cuenta de la situación con el contrato, los terremotos y los efectos de la pandemia.

Luego de examinar los planteamientos de las partes, a la luz de las particularidades del caso, y el derecho aplicable a la controversia de autos, procedemos a confirmar la Sentencia apelada por fundamentos distintos[1]. Veamos.

Al examinar el tracto de la controversia antes nos, estamos de acuerdo con la Apelante en cuanto a que la Sala de Instancia incidió al aplicar la doctrina de *rebus sic stantibus*. Es un requisito indispensable que, en todo caso en donde se contemple la aplicación de la doctrina, ocurra una circunstancia imprevisible que altere el negocio jurídico. Sin embargo, ese no es el caso ante

---

[1] Es norma reiterada de derecho apelativo que la revisión recae sobre la sentencia misma y no contra sus fundamentos. <u>Asoc. Pesc. Pta. Figueras v. Pto. del Rey</u>, 155 DPR 906, 920 (2001).

nos. Si bien es cierto que en enero de 2020 hubo una serie de terremotos que sacudieron a Puerto Rico, y en marzo del mismo año, la pandemia COVID-19 paralizó la economía, el primer incumplimiento del Apelado fue durante los meses de septiembre, octubre y noviembre del 2019. Es decir, al momento en que el Apelado incumplió con el acuerdo pactado, ni los terremotos ni la pandemia habían alterado el negocio jurídico, por lo que, no existió ninguna circunstancia imprevisible que le impidiera al Apelado cumplir con su obligación.

A su vez, la Apelante arguyó que el incumplimiento del acuerdo ocurrió en septiembre de 2019, no obstante, diferimos. En el acuerdo se estableció un plan de pagos, que de incumplirse, lo haría nulo.[2] A pesar de que el Apelado no realizó los pagos de septiembre, octubre y noviembre de 2019, la Apelante le aceptó un pago de $600.00 en diciembre de 2019 por las cuotas no pagadas en esos tres meses anteriores. Además, la Apelante acreditó ese pago a la totalidad del principal de $8,985.00, reduciendo el balance de la deuda a $8,385.00.[3]

De manera que, al aceptar el pago tardíamente, sin reparo alguno, y acreditarlo para reducir el balance de la deuda, la Apelante no puede actuar en contravención de sus propios actos y, dos años después, reclamar que hubo incumplimiento en septiembre de 2019. Incluso, la Asociación nunca emitió una decisión o le informó al señor Sánchez Rodríguez que dejó sin efecto el acuerdo antes de realizar las gestiones de cobro instadas en octubre de 2021[4]. Esto implica que, la Asociación guardó silencio y no le reclamó el pago al Apelado ni mencionó que el acuerdo de pago quedó sin efecto. Al no declarar nulo el contrato cuando ocurrió la primera falta, este quedó en pleno vigor,

---

[2] Sentencia, pág. 7.
[3] Sentencia, Determinaciones de hechos números 11 y 12.
[4] Sentencia, Determinación de hechos número 17.

conforme a la prueba presentada. Así pues, la cláusula de nulidad no se puede aplicar de forma retroactiva como lo solicita el Apelante.

En suma, luego de revisar minuciosamente el expediente ante nuestra consideración, e independientemente a los fundamentos que vertió el foro primario para emitir su sentencia, concordamos con el resultado al que arribó la Sala de Instancia. No hay duda de que ambas partes aceptaron la deuda principal de $8,985.00, en septiembre de 2019. Al acreditarse el pago de $600.00 a ese principal, la deuda quedó $8,385.00. Luego de ello el Apelado no pagó ni realizó abonos al principal. A esa cantidad de principal, el foro primario le sumó las mensualidades de $50.00, más los intereses y penalidades que no fueron satisfechas desde diciembre de 2019 hasta octubre de 2021, para un total adeudado de $10,710.72.

La Apelante no rebatió de forma alguna esta determinación. Tampoco puso a este Tribunal, ni al Foro Inferior, en posición de conceder su reclamo de $59,364.47, el cual pretendía el pago de cuotas de mantenimiento de manera retroactiva. Además, esta cantidad es incompatible con el acuerdo de pago que estaba en pleno vigor, según ya lo expusimos. Por tanto, se confirma la *Sentencia* apelada.

**IV.**

Por los fundamentos antes expuestos, se *Confirma* el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones