ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| LUMA ENERGY, LLC., LUMA ENERGY SERVCO, LLC.<br><br>Recurrentes<br><br>v.<br><br>DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO, GOBIERNO DE PUERTO RICO<br><br>Recurrido | KLRA202400425 | *Revisión Judicial de Decisión Administrativa*, procedente del Departamento de Desarrollo Económico y Comercio<br><br>Caso Núm. 2023-Act60/2071.01-000152 Re: Denial of Tax Exemption Application Under Act No. 60-2019, as the "Puerto Rico Incentives Code"<br><br>Sobre: Denegatoria de Solicitud de Decreto bajo el Código de Incentivos de Puerto Rico |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 23 de octubre de 2024.

Comparece LUMA Energy, LLC y LUMA Energy ServCo, LLC. (en conjunto, "LUMA" o "Recurrentes") mediante *Recurso de Revisión Administrativa* y solicitan la revisión de la determinación notificada el 7 de mayo de 2024, por el Departamento de Desarrollo Económico y Comercio ("DDEC" o "Recurrido"), en el asunto *Re: Denial of Tax Exemption Application Under Act No. 60-2019, as the "Puerto Rico Incentives Code"*. Mediante el referido dictamen, el DDEC, de manera prematura, denegó la solicitud de exención contributiva sobre ingresos, a razón de una tasa fija preferencial de 4%, instada por los Recurrentes.

Por los fundamentos que expondremos a continuación, se *Revoca* el dictamen recurrido.

### I.

El 22 de junio de 2020, a LUMA le fue adjudicada una alianza público privada con la Autoridad de Energía Eléctrica de Puerto Rico ("AEE"), bajo las provisiones de la Ley Núm. 29 de 8 de junio de 2009 según enmendada,

conocida como "*Ley de Alianzas Público Privadas*", 27 LPRA sec. 2601 nota *et seq.* ("Ley 29-2009"), para la operación y manejo del sistema de transmisión y distribución, por un término de quince (15) años. Como parte del *Acuerdo de Operación y Manejo* ("Acuerdo"), las contribuciones sobre el ingreso neto derivado de las actividades relacionadas al mismo estarían sujetas a una tasa fija preferencial de veinte por ciento (20%).

El 20 de diciembre de 2023, LUMA presentó, ante el DDEC, una solicitud de exención contributiva bajo la Sección 2071.01 (10)(iv) de la Ley Núm. 60 del 1 de julio de 2023, según enmendada, conocida como el "*Código de Incentivos de Puerto Rico*", 13 LPRA sec. 45651 ("Código de Incentivos"), con la intención de reducir la tasa fija preferencial aplicable a las contribuciones sobre ingresos. LUMA arguyó que los servicios provistos como parte del Acuerdo constituían actividades de Energía Verde o Altamente Eficiente, amparadas bajo la Sección 2071.01 (10)(iv) del Código de Incentivos, *supra*, elegibles a una tasa fija preferencial de cuatro por ciento (4%).

Tras varios trámites procesales, el 3 de abril de 2024, la Oficina de Incentivos a Negocios en Puerto Rico ("Oficina de Incentivos"), adscrita al DDEC, le envió a LUMA un borrador de decreto y le proveyó diez (10) días para que presentara comentarios. De igual manera, la Oficina de Incentivos le remitió el Borrador al Departamento de Hacienda ("Hacienda"), al Centro de Recaudación de Impuestos Municipales ("CRIM") y a los municipios, otorgándoles veinte (20) días para someter sus recomendaciones o comentarios.

El 15 de abril de 2024, la Oficina de Incentivos, le envió a Hacienda, el CRIM y a los municipios un nuevo borrador de decreto y, en consecuencia, extendió el plazo para presentar comentarios o recomendaciones hasta el 12 de mayo de 2024. Consecuentemente, varios municipios, tales como Isabela, Barranquitas, Ciales, Guaynabo, Canóvanas, Manatí, Santa Isabel, Cataño, Aibonito y San Sebastián, respectivamente, presentaron sus objeciones al Borrador y a la solicitud de concesión contributiva.

Por su parte, el CRIM notificó su oposición el 2 de mayo de 2024. En esencia, el CRIM postuló que, la exención contributiva sería perjudicial para las finanzas de los municipios porque no solo LUMA, sino también sus contratistas y subcontratistas, recibirían una exención de setenta y cinco por ciento (75%) en impuestos municipales y estatales sobre la propiedad mueble e inmueble, así como una exención total sobre la construcción de obras utilizadas para la operación del negocio. Luego, el 3 de mayo de 2024, la Federación de Alcaldes de Puerto Rico ("FAPR"), en representación de los municipios de Aibonito, Barranquitas, Bayamón, Canóvanas, Cataño, Culebra, Fajardo, Guaynabo, Humacao, Manatí, Naranjito, San Germán, San Juan, Toa Baja, Utuado, Vieques y Yauco, notificó sus comentarios. La FAPR arguyó que, los impuestos sobre propiedad, licencias municipales e impuestos sobre construcción representaban la mayor fuente de ingresos para muchos municipios. Como corolario, señaló que, conceder la exención solicitada por los Recurrentes disminuiría los recursos económicos de los municipios, socavando así el presupuesto operacional de los mismos.

Por otro lado, el 6 de mayo de 2024, la Asociación de Alcaldes de Puerto Rico ("AAPR"), en representación de los municipios de Aguadilla, Arecibo, Caguas, Carolina, Cayey, Guayama, Hormigueros, Humacao, Isabela, Mayagüez, Ponce, Quebradillas, Santa Isabel, Toa Alta y Vega Baja, presentó su oposición. La AAPR expuso que, el decreto propuesto era contrario a la política articulada en el plan fiscal aprobado por la Junta de Control Fiscal que recomendaba no ofrecer incentivos que perjudicaran el tesoro de los municipios, sin el consentimiento de los municipios afectados. El 7 de mayo de 2024, Hacienda presentó su objeción y sostuvo que, luego de evaluada la solicitud de LUMA, estimaba que la aprobación de la exención contributiva resultaría en un costo fiscal anual de $16.7 millones.

Evaluada la solicitud, las oposiciones presentadas y la recomendación de la Oficina de Incentivos, el 7 de mayo de 2024, el DDEC emitió su denegatoria al decreto de exención contributiva, a una tasa fija preferencial de cuatro por ciento (4%), solicitado por LUMA. Mediante el referido

dictamen, el DDEC realizó veintiún (21) determinaciones de hechos. El DDEC concluyó que, en atención al mejor interés de Puerto Rico, procedía denegar la solicitud de concesión contributiva instada por LUMA.

Inconformes, 5 de junio de 2024, LUMA presentó una *Solicitud de Reconsideración,* la cual fue denegada el 9 de julio de 2024. Insatisfechos aun, el 5 de agosto de 2024, LUMA acudió ante esta Curia mediante *Recurso de Revisión Administrativo* y solicitó la revisión de la denegatoria emitida el 7 de mayo de 2024. El Recurrente le imputó al DDEC la comisión de los siguientes errores:

> **Erró el DDEC al obviar el principio de exclusividad del expediente administrativo, pues este carece de la evaluación inicial y la recomendación final de la OI sobre la solicitud, según requerido por el Código de Incentivos.**
>
> **Erró el DDEC al abusar de su discreción al tomar en consideración información apoyada en datos incorrectos y/o bases jurídicas erróneas para denegar la solicitud, por lo que no se le debe dar deferencia alguna a su determinación.**
>
> **Erró el DDEC al actuar en contra de sus propios actos al emitir la denegatoria del decreto sin honrar la prórroga otorgada a LUMA para presentar comentarios al segundo borrador del decreto.**
>
> **Erró el DDEC al no tomar en consideración que LUMA y sus afiliadas han invertido en beneficio para Puerto Rico, por lo que debió reconsiderar la denegatoria del decreto, conforme lo permite el Código de Incentivos.**

El 26 de septiembre de 2024, el DDEC presentó su alegato en oposición. Perfeccionado el recurso y contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico ("LPAU"), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023). Es norma reiterada que,

al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente*, 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación,* 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde, supra.* Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Hernández Feliciano v. Mun. Quebradillas, supra*, a la pág. 115.

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

**-B-**

La Ley Núm. 29 de 8 de junio de 2009, según enmendada, conocida como la "*Ley de Alianzas Público Privadas*", 27 LPRA sec. 2601 nota *et seq.* ("Ley 29-2009") fue promulgada con el propósito de:

> [E]stablecer una nueva política pública y proveer el marco legal que promueva el uso de las Alianzas Público Privadas como estrategia de desarrollo, manteniendo los controles necesarios para proteger el interés público en armonía con el motivo de ganancia de toda operación privada. Véase, Exposición de Motivos de la Ley 29-2009, *supra.*

El precitado estatuto enfatiza que el poder del Estado para fijar impuestos y emitir deuda es utilizado con el fin de atender la necesidad de proveer los bienes y servicios públicos, no obstante, dispone que tal poder está restringido por el nivel de la actividad económica del país. *Íd.* Añade

que, "*[s]i el Gobierno pierde o disminuye su capacidad de recaudar impuestos y de emisión de deuda, se enfrenta a una crisis fiscal*". *Íd.*

Para efectos de las disposiciones estatutarias de la Ley 29-2009, *supra*, el Artículo 2, 27 LPRA sec. 2601, define "Alianza Público Privada, Alianza y Alianza Público Privada Participativa", a saber:

> Cualquier acuerdo entre una Entidad Gubernamental y una o más personas, sujeto a la política pública establecida en esta Ley, cuyos términos están provistos en un Contrato de Alianza, para la delegación de las operaciones, Funciones, Servicios o responsabilidades de cualquier Entidad Gubernamental, así como para el diseño, desarrollo, financiamiento, mantenimiento u operación de una o más instalaciones, o cualquier combinación de las anteriores.

Asimismo, define "Contratantes" como "*[l]a Persona que otorga un Contrato de Alianza con una Entidad Gubernamental Participante o su sucesor*". *Íd.* Atinente a la controversia ante nos, el Artículo 12 (a) de la Ley 29-2009, 27 LPRA sec. 2611, regula aquello relacionado a la responsabilidad y los beneficios contributivos concedidos a los Contratantes. Particularmente, el citado artículo dispone lo siguiente sobre la tasa fija de contribución sobre ingresos:

> Los Contratantes en una Alianza establecida bajo esta Ley estarán sujetos a una **tasa fija de contribución sobre ingresos de veinte por ciento (20%) sobre el ingreso neto derivado de las operaciones dispuestas en el Contrato de Alianza**, computado de acuerdo con el Código, a partir de la fecha de comienzo de operación de la Alianza; en lugar de cualquier otra contribución sobre ingreso, si alguna, dispuesta por este Código o cualquier otra Ley incluyendo, sin limitarse a, la contribución alternativa mínima y la contribución sobre el monto equivalente a dividendos impuestas bajo el Código. *Íd.*

(Énfasis suplido)

A tenor con la Ley 29-2009, *supra*, se promulgó la Ley 120 de 20 de junio de 2018, según enmendada, conocida como "*Ley para Transformar el Sistema Eléctrico de Puerto Rico*", 22 LPRA sec. 1111 *et seq.* ("Ley 120-2018"), la cual creó el marco legal para el traspaso de los activos de la Autoridad de Energía Eléctrica, utilizando el modelo de las Alianzas Público Privadas establecido en la Ley 29-2009, *supra*.

Posteriormente, y en armonía con el propósito de la Ley 29-2009, *supra*, el Gobierno de Puerto Rico aprobó la Ley Núm. 60 de 1 de julio de

2019, según enmendada, mejor conocida como el "*Código de Incentivos de Puerto Rico*", 13 LPRA sec. 45001 *et seq.* ("Código de Incentivos"). El Código de Incentivos, con la intención de contrarrestar la contracción económica que atraviesa el país, "*establecerá el marco legal y administrativo que regirá la solicitud, evaluación, concesión o denegación de incentivos por el Gobierno de Puerto Rico; logrará dar estabilidad, certeza y credibilidad para todo tipo de inversión privada en Puerto Rico y servirá de herramienta promocional para la inversión en la isla*". Véase, Exposición de Motivos del Código de Incentivos, *supra.*

Ahora bien, la Sección 2017.01 (10)(iv) del Código de Incentivos, 13 LPRA sec. 45, regula la concesión de incentivos a favor de empresas dedicadas a la infraestructura y a la energía verde o altamente eficiente. En específico, la referida sección establece lo siguiente:

> Se provee para que un negocio establecido, o que será establecido, en Puerto Rico por una Persona, organizado o no bajo un nombre común, pueda solicitarle al Secretario del DDEC la Concesión de Incentivos cuando la Entidad se establece en Puerto Rico para dedicarse a una de las siguientes actividades elegibles:
> [...]
> (10) Durante los primeros cinco (5) años contados a partir de la fecha de vigencia de este Código, un negocio establecido, o que será establecido, en Puerto Rico por una Persona, organizado o no bajo un nombre común, podrá solicitar un Decreto para llevar a cabo las siguientes actividades elegibles:
> [...]
> (iv) Todo contratante al amparo de la Ley 120-2018, según enmendada, conocida como "Ley para Transformar el Sistema Eléctrico de Puerto Rico", será elegible para la concesión de un Decreto bajo este inciso y/o el tratamiento contributivo provisto bajo el apartado (a) del Artículo 12 de la Ley 29-2009, según enmendada, conocida como "Ley de Alianzas Público Privadas". *Íd.*

Consecuentemente, la Sección 2072.01 (d)(1) del Código de Incentivos, 13 LPRA sec. 45661, establece que los Negocios Exentos cuyas actividades se describen en los párrafos (6), (7), (8), (9) y (10) de la Sec. 2071.01, *supra*, estarán sujetos a una tasa fija preferencial de cuatro por ciento (4%). Específicamente, la Sección 2072.01 (d)(1), *supra*, lee como sigue:

> (d) Negocios dedicados a la industria de Energía Verde o Altamente Eficiente. — Los Negocios Exentos cuyas

actividades se describen en los párrafos (6), (7), (8), (9) y (10) de la Sección 2071.01 estarán sujetos a lo siguiente:

(1) Tasa fija preferencial de cuatro por ciento (4%). — Los negocios antes descritos estarán sujetos a una tasa fija preferencial de contribución sobre ingresos de cuatro por ciento (4%) sobre su Ingreso de Energía Verde o Altamente Eficiente durante el período de exención correspondiente, en lugar de cualquier otra contribución sobre ingresos, si alguna, dispuesta por el Código de Rentas Internas de Puerto Rico o cualquier otra ley.

La Sección 6020.01 del Código de Incentivos, 13 LPRA sec. 48521, regula el procedimiento de solicitud para la concesión de incentivos contributivos. En lo aquí pertinente, el inciso (e) de la referida sección, establece el trámite extraordinario de la siguiente manera:

(e) *Tr[á]mite Extraordinario. —*
(1) Un trámite extraordinario es aquel que requiere un lenguaje particular no contemplado en los formularios prediseñados y que conlleva un proceso de negociación entre las partes y la evaluación, consulta o recomendación de alguna otra agencia del Gobierno de Puerto Rico para su aprobación.
(2) Los Decretos que se otorguen mediante el trámite extraordinario podrán contener niveles mínimos de inversión, empleos u otras condiciones que no sean de aplicabilidad general a todos los Concesionarios.
(3) Bajo el trámite extraordinario, se identificará aquellas agencias del Gobierno de Puerto Rico o municipios con inherencia sobre la solicitud de concesión de incentivos presentada y se les solicitará una recomendación sobre la viabilidad legal y económica del mismo. En estos casos, se seguirá el procedimiento establecido en el apartado (g) *[sic] de* esta Sección. *Íd.*

Asimismo, el inciso (h) de la referida sección esboza que, bajo el trámite extraordinario, el Secretario del DDEC deberá enviar una notificación al Secretario de Hacienda y, de entenderlo pertinente, a las agencias correspondientes, así como al CRIM y a los municipios donde opera el negocio solicitante, dentro de un término de cinco (5) días laborables, contados a partir de la fecha en que se completó el proceso de solicitud de concesión de incentivos. Recibida la notificación, los notificados tendrán un término de veinte (20) días laborables para someter sus comentarios al Secretario del DDEC. *Íd.* Transcurrido el término para emitir comentarios, la Oficina de Incentivos deberá completar la evaluación de la solicitud y enviar la evaluación al Secretario del DDEC, en un término no mayor de

diez (10) días laborables. *Íd.* Notificada la evaluación final de la Oficina de Incentivos, el Secretario del DDEC deberá emitir su determinación. Sección 6020.01 (i) del Código de Incentivos, *supra*.

Sobre la facultad discrecional del Secretario del DDEC al emitir su determinación, el inciso (i) de la Sección 6020.01, *supra*, expresa que:

> El Secretario del DDEC **podrá descansar en los comentarios de aquellas agencias o municipios que sean consultadas** y podrá solicitarles a éstas información adicional que suplemente la incluida al momento de emitir su recomendación. **Toda aprobación o denegación de la solicitud de concesión de incentivos será de la discreción del Secretario del DDEC, sujeto al endoso del Departamento de Hacienda**.

(Énfasis suplido)

Cónsono con lo anterior, el Código de Incentivos facilita "*el análisis de nuestros incentivos para **determinar la deseabilidad de mantener, modificar o descontinuar algún incentivo que demuestre ser obsoleto, o consecuentemente, que haya resultado en un rendimiento negativo***". Véase, Exposición de Motivos del Código de Incentivos, *supra*. (Énfasis suplido).

Finalmente, la Sección 6020.05 del Código de Incentivos, 13 LPRA sec. 48525, postula lo siguiente:

> (a) *Denegaciones.* —
> (1) El Secretario del DDEC **podrá denegar cualquier solicitud cuando determine que la concesión no resulta en los mejores intereses económicos y sociales de Puerto Rico**, luego de considerar la naturaleza de las facilidades físicas, el número de empleos, el montante de la nómina y la inversión, la localización del proyecto, su impacto ambiental, los recursos disponibles u otros factores que a su juicio ameritan tal determinación, así como las recomendaciones de las agencias que rinden informes sobre exención contributiva.
> […]
> (b) *Denegación por Conflicto con el Interés Público*
> (1) El Secretario del DDEC **podrá denegar cualquier solicitud cuando determinare, a base de los hechos presentados a su consideración, que la solicitud está en conflicto con el interés público de Puerto Rico**, que el negocio solicitante no ha sido organizado como negocio bona fide con carácter permanente, o en vista de la reputación moral o financiera de las personas que lo constituyen, los planes y métodos para obtener financiamiento, o cualquier otro factor que pueda indicar que existe una posibilidad razonable de que la concesión de exención resultará en perjuicio de los intereses económicos y sociales de Puerto Rico.

[…]

(Énfasis suplido)

En otras palabras, el Secretario del DDEC podrá denegar cualquier solicitud cuando determine que la misma se encuentra en contra del interés público, social o económico de Puerto Rico.

**-C-**

La doctrina de los actos propios es una norma que emana del concepto de equidad contemplado en los Artículo 2, 5 y 6 del Código Civil de Puerto Rico, 31 LPRA sec. 5312, 5315, 5316. Particularmente, la doctrina procura que las personas no vayan en contra de sus propios actos, y que actúen de buena fe en el ejercicio de sus derechos y en el cumplimiento de las obligaciones en las que incurran en variadas relaciones jurídicas. *Int. General Electric v. Concrete Builders*, 104 DPR 871, 876-77 (1976); *Vivoni Farage v. Ortiz Carro*, 179 DPR 990, 1010 (2010).

Para que la doctrina de los actos propios sea de aplicación, deben reunirse los siguientes elementos: (a) una conducta determinada de un sujeto; (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás; y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. *Int. General Electric v. Concrete Builders*, *supra*, a la pág. 878; *Vivoni Farage v. Ortiz Carro*, *supra*, a las págs. 1010–1011. En otras palabras, en virtud de esta doctrina, un litigante está impedido de adoptar una actitud que sea contradictoria con una conducta anterior, sobre la cual la parte perjudicada ha confiado, y ello sin importar la verdadera intención de la parte que genera esa confianza. *Pardo v. Sucn. Stella*, 145 DPR 816, 829 (1998).

Como norma general, la doctrina de actos propios no aplica a las relaciones de partes privadas frente al Estado en aquellas situaciones en las que el interés y la política pública del Estado se ven lesionados. *Quiles v. Del Valle*, 167 DPR 458, 478 (2006); *OCS v. Universal*, 187 DPR 164, 174

(2012). Debido a que la doctrina de actos propios no es oponible al Estado, cuando una agencia haya cometido un error administrativo, esta podrá corregirlo. *González v. E.L.A.* 167 DPR 400, 413 (2006); *Santiago v. Depto. de la Familia*, 153 DPR 208, 218 (2001). Por último, al evaluar una solicitud de revisión judicial, los tribunales tienen que otorgar mayor deferencia a las decisiones que toman las agencias administrativas, pues son estas las que, de ordinario, poseen el conocimiento especializado para atender los asuntos que les han sido encomendados por ley. *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006).

**-D-**

Nuestro más Alto Foro ha establecido que las determinaciones de los foros administrativos serán sostenidas, si se basan en evidencia sustancial que surja del expediente administrativo. *Batista, Nobre v. Jta. Directores,* 185 DPR 206, 216 (2012), citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011); *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999).

Cónsono con lo anterior, el principio de exclusividad salvaguarda el derecho de las partes a que la decisión del foro adjudicador sea basada en el expediente. Sección 3.1 de la LPAU, 3 LPRA sec. 9641. El Tribunal Supremo ha enfatizado que, "*[e]s sólo cuando la determinación administrativa se fundamenta en el récord del caso a ser resuelto que se garantiza a las partes la oportunidad de refutar la corrección del dictamen de la agencia y la posterior revisión judicial*". *Magriz v. Empresas Nativas*, 143 DPR 63, 71 (1997).

**III.**

En síntesis, LUMA alega que el DDEC incidió al: (1) obviar el principio de exclusividad del expediente administrativo; (2) utilizar información incorrecta o sin fundamentos para sustentar su denegatoria; (3) actuar en contra de sus propios actos al emitir la denegatoria sin honrar la prórroga otorgada, y; (4) no tomar en consideración lo invertido por LUMA en beneficio de Puerto Rico.

Los errores segundo y cuarto serán discutidos de manera conjunta, por entender que están intrínsicamente relacionados. Ciertamente, el Código de Incentivos les concede a aquellos negocios dedicados a la industria de energía verde o altamente eficiente el derecho a solicitar un beneficio contributivo a razón de una tasa fija preferencial sobre ingresos de cuatro por ciento (4%). Sin embargo, el propio estatuto le concede al Secretario del DDEC una facultad discrecional para conceder o denegar las solicitudes de concesiones contributivas. Previo a emitir una determinación, el Secretario del DDEC deberá tomar en consideración la postura de aquellos municipios en donde opere el negocio, al igual que la opinión del CRIM y Hacienda. Así las cosas, actuando en beneficio del interés público, económico y social de Puerto Rico, el Secretario del DDEC determinará si procede o no lo solicitado.

Aquellos que fueron notificados del borrador de decreto presentaron sus comentarios sobre la concesión del mismo, mediante escritos dirigidos al Secretario del DDEC. Conforme surge, los concernidos expresaron sus preocupaciones y se opusieron a la concesión de mayores incentivos a favor de LUMA.

Mediante el primer señalamiento de error, LUMA arguye que el foro recurrido erró al obviar el principio de exclusividad del expediente administrativo, toda vez que la evaluación inicial y la recomendación final de la Oficina de Incentivos no obran en el expediente. Por su parte, el DDEC sostiene que la determinación del Secretario del DDEC está basada y encuentra amplio apoyo en los documentos sometidos por los municipios, el CRIM y Hacienda.

Según hemos reseñado, la Sección 3.1 de la LPAU, *supra*, establece el derecho de todas las partes a que la decisión del foro administrativo sea basada en la totalidad del expediente. Por otro lado, el Código de Incentivos dispone que *"[e]l Secretario del DDEC **podrá descansar en los comentarios de aquellas agencias o municipios que sean consultadas** [...]"*. Sección 6020.01 (i) del Código de Incentivos, *supra.* (Énfasis suplido). En otras

palabras, el Director del DDEC no viene obligado a basar su determinación en la evaluación y recomendación de la Oficina de Incentivos.

Los pronunciamientos de las agencias administrativas gozan de un amplio margen de deferencia por parte del tribunal revisor, ello dado su conocimiento especializado en la materia que regulan. En este contexto, nuestra función estriba en resolver si los mismos son razonables a luz de la prueba que obra en el expediente administrativo.

En el caso de marras, surge de la denegatoria que, conforme permite el Código de Incentivos, las veintiún (21) determinaciones realizadas por el Secretario del DDEC fueron basadas, exclusivamente, en los comentarios presentados por los municipios, el CRIM y Hacienda, los cuales obran en el expediente. El Código de Incentivos no obliga al Secretario del DDEC a fundamentar su determinación en la recomendación de la Oficina de Incentivos, contrario a lo sostenido por los Recurrentes. Por ende, el DDEC no infringió el principio de exclusividad al no incluir en el expediente copia de la recomendación final de la Oficina de Incentivos. Resulta forzoso concluir que, el foro recurrido no incidió al excluir la evaluación inicial y la recomendación final de la Oficina de Incentivos del expediente administrativo.

Finalmente, mediante el tercer error señalado, LUMA arguye que, el DDEC actuó en contra de sus propios actos al emitir la denegatoria, previo a que culminara el plazo de veinte (20) días para presentar comentarios sobre el borrador de decreto. Por el contrario, el DDEC sostiene que, la doctrina de actos propios no crea obligaciones en el contexto de una entidad gubernamental. Asimismo, el DDEC arguye que, la referida doctrina, como norma general, no aplica en aquellas situaciones que se ven lesionados el interés y la política pública del Estado.

Conforme arguye el DDEC, la doctrina de actos propios no es de aplicación en el caso de epígrafe. Según hemos discutido, la doctrina de actos propios no aplica en la relación de partes privadas frente al Estado en aquellas circunstancias en las que el interés y la política pública del Estado

se ven lesionados. *Quiles v. Del Valle, supra,* a la pág. 478; *OCS v. Universal, supra,* a la pág. 174. Así, pues, nuestro Tribunal Supremo ha resuelto que, cuando una agencia haya cometido un error administrativo, esta podrá corregirlo. *González v. E.L.A, supra,* a la pág. 413; *Santiago v. Depto. de la Familia, supra,* a la pág. 218. No obstante, cabe adelantar que, el incumplimiento con un procedimiento establecido por ley no es un mero error administrativo que podrá ser subsanado.

Ahora bien, en cumplimiento con el trámite expedito, el Secretario del DDEC les envió a aquellas partes concernidas el borrador de decreto solicitado y, a su vez, le concedió un término de veinte (20) días laborables para emitir sus comentarios. Surge del expediente que, el 30 de abril de 2024, a preguntas de LUMA, el DDEC confirmó que la fecha límite para presentar comentarios sería el 12 de mayo de 2024. Particularmente, el DDEC respondió de la siguiente manera:

> Saludos,
>
> En efecto, el término inter-agencial se extendió hasta el 12 de mayo, pues hubo algunos cambios mínimos al borrador original. Adjunto el documento de referencia.
>
> Si el Peticionario desea tiempo adicional para emitir comentarios hasta el 12 de mayo se puede conceder el mismo.
>
> Quedo atenta,
>
> ÁMBAR G. CORDERO GONZÁLEZ[1]

Ese mismo día, LUMA respondió, como sigue: "*[p]or este medio **queremos solicitar el tiempo adicional hasta el 12 de mayo** para emitir los comentarios al borrador*".[2] (Énfasis suplido). A pesar de la prórroga concedida, el 7 de mayo de 2024, el DDEC emitió su fallo denegatorio en contra de la exención contributiva solicitada por LUMA.

En lo que respecta, sobre el término para someter comentarios, la Sección 6020.01 (h) del Código de Incentivos, *supra,* establece que cada agencia notificada, al igual que los municipios y el CRIM, tendrá un término de veinte (20) días laborables para someter sus comentarios, contados a

---

[1] Véase, Apéndice de la Parte Recurrente, a la pág. 143.
[2] *Íd.*

partir de la fecha que reciba la solicitud de concesión de incentivos. A su vez, pasados los veinte (20) días laborables, la Oficina de Incentivos deberá completar la evaluación de la solicitud y emitir la recomendación al Secretario del DDEC en un término no mayor de diez (10) días laborables. *Íd.*

El término provisto por la precitada sección comenzó a correr nuevamente el 15 de abril de 2024, tras la notificación del segundo borrador del decreto. Tal y como establece el Código de Incentivos, el DDEC le concedió a Hacienda, el CRIM y a los municipios veinte (20) días laborables para emitir sus comentarios, término que vencía el 12 de mayo de 2024. Conforme dispone el referido estatuto, a partir del 12 de mayo de 2024, la Oficina de Incentivos debía tener un término de diez (10) días laborables para evaluar la solicitud y emitir al Secretario del DDEC su recomendación final. No obstante, el 7 de mayo de 2024, **previo a que culminara el plazo interagencial para presentar comentarios y antes de que comenzara a transcurrir el término para que la Oficina de Incentivos evaluara la solicitud y presentara su recomendación, el Secretario del DDEC emitió su denegatoria a la solicitud de concesión de incentivos presentada por LUMA.**

El Secretario del DDEC incidió al incumplir con el procedimiento dispuesto en la Sección 6020.01 del Código de Incentivos, *supra.* En el caso de marras, surge meridianamente claro que, el DDEC le concedió a LUMA, así como a todos los municipios, el CRIM y a Hacienda, hasta el 12 de mayo de 2024 para emitir sus comentarios al borrador. No obstante, cinco (5) días antes de que culminara el plazo, el DDEC, de manera prematura y contrario al procedimiento establecido por la Sección 6020.01 del Código de Incentivos, *supra,* notificó su denegatoria. El Código de Incentivos, *supra,* de manera clara y expresa, establece el procedimiento y los términos a cumplir al recibir una solicitud de concesión de incentivos. Por lo que, el DDEC incidió al denegar la concesión del decreto solicitado sin brindarle la

oportunidad a LUMA de presentar sus comentarios al segundo borrador del decreto circulado.

**IV.**

Por los fundamentos aquí expuestos, y sin entrar en los méritos de la procedencia o no del incentivo solicitado, se *Revoca* el dictamen recurrido, a los únicos fines de devolver la solicitud al DDEC para la continuación de los procedimientos, en cumplimiento con los procesos dispuestos en el Código de Incentivos, *supra.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones