Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MARTA PASTRANA ORTIZ; ZUJEIRY ROSA PASTRANA**;** PATRICK PÉREZ TRINIDAD Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Apelantes<br><br>V.<br><br>UNIVERSAL INSURANCE COMPANY; SUPERMERCADO LA FAVORITA Y AURELIO MÁRQUEZ<br><br>Apelados | TA2025AP00152<br>TA2025CE00227<br>TA2025CE00271 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.:<br>HU2024CV01065<br><br>Sobre: Daños y perjuicios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de octubre de 2025.

Las señoras Marta Pastrana Ortiz (señora Pastrana Ortiz) y la señora Zujeiry Rosa Pastrana (señora Rosa Pastrana) (en conjunto, apelantes) comparecieron ante este Tribunal mediante un recurso de apelación y dos recursos (2) *certiorari*[1] para revisar varias determinaciones emitidas por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI). En específico, solicitaron que revisáramos: (1) una *Sentencia Parcial* del 23 de junio de 2025, en la que declaró Ha Lugar la solicitud de sentencia declaratoria presentada por el Sr. Aurelio Márquez Mediavilla (señor Márquez Mediavilla o apelado) y, en consecuencia, se desestimó la *Demanda* en su contra;[2] (2) una *Sentencia Parcial* de igual fecha, en la que denegó la solicitud de sentencia sumaria del apelado;[3] (3) una *Orden*

---

[1] El 20 de agosto de 2025, este Tribunal emitió una *Resolución* en la que ordenó la consolidación de los tres (3) recursos por versar sobre las mismas partes y originarse en el mismo procedimiento ante el Foro Primario.
[2] Entrada Núm. 142 del caso HU2024CV01065 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada el 23 de junio de 2025.
[3] *Íd.*, Entrada Núm. 143 en SUMAC. Notificada el 24 de junio de 2025.

del 30 de junio de 2025, en la que denegó enmendar la *Demanda* contra Universal Insurance Company (Universal),[4] y (4) una *Resolución* del 15 de julio de 2025, en la que impuso a las apelantes el pago de $16,452.00 en costas a favor del apelado.[5]

Por los fundamentos que se exponen a continuación, se expiden los autos de *certiorari* y se revocan tanto la *Orden* como la *Resolución* recurridas. Además, se revocan ambas *Sentencias Parciales* apeladas.

## I.

Este caso se originó el 23 de julio de 2024, cuando las apelantes y otros presentaron una *Demanda* por daños y perjuicios contra el Supermercado La Favorita Inc. (Supermercado), Universal y el señor Márquez Mediavilla.[6] En esta, alegaron que el 4 de abril de 2024, la señora Pastrana Ortiz se cayó en el Supermercado al resbalar con un líquido, por lo que requirió atención y tratamiento médico. Además, adujeron que contactaron al señor Márquez Mediavilla, asegurador del Supermercado, quien dejó de atender su reclamación tras varios intercambios de misivas. Ante la falta de respuesta, sostuvieron que enviaron una reclamación extrajudicial al apelado y al Supermercado, cuya presidenta suscribió una nueva póliza con Universal. Por ello, reclamaron indemnización solidaria por daños, angustias mentales, lucro cesante y gastos médicos.

El 28 de agosto de 2024, el Supermercado y Universal presentaron una *Contestación a Demanda*.[7] Entre otros, negaron las alegaciones de los daños e indicaron que, a pesar de que el Supermercado tomó medidas de seguridad, le ofrecieron una oferta transaccional que fue rechazada por las apelantes.

---

[4] *Íd.*, Entrada Núm. 145 en SUMAC. Notificada el 24 de junio de 2025.
[5] *Íd.*, Entrada Núm. 154 en SUMAC. Notificada el 16 de julio de 2025.
[6] *Íd.*, Entrada Núm. 1 en SUMAC.
[7] *Íd.*, Entrada Núm. 9 en SUMAC.

Tras varios trámites procesales, el 17 de octubre de 2024, las apelantes solicitaron autorización para enmendar la *Demanda* para precisar los alegados hechos sobre los daños atribuidos al señor Márquez Mediavilla.[8] En particular, arguyeron que, al ser productor y no empleado de Universal, debía informar su rol y no hacerles creer que era responsable del proceso de reclamación del seguro. Las apelantes entendieron que la intención del apelado era que desistieran de la reclamación y calificaron su conducta como una práctica desleal contraria al Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, 26 LPRA sec. 101 *et seq.*

En igual fecha, el TPI denegó la enmienda a la *Demanda*. Luego de las apelantes presentar un recurso de *certiorari*, el 27 de enero de 2025, este Tribunal revocó al Foro *a quo*, al concluir que debió hacer un análisis de los criterios establecidos para conceder el permiso de enmendar las alegaciones.[9] Esta Curia indicó que la propuesta tenía una causa de acción principal que afectaba exclusivamente al señor Márquez Mediavilla, quien no había presentado alegación responsiva, y dos (2) alternativas, una que afectaba exclusivamente al apelado y otra que también afectaba al Supermercado.

Eventualmente, el 28 de abril de 2025, el señor Márquez Mediavilla presentó una *Moción de Solicitud de Sentencia Declaratoria*.[10] En esta, expuso que no respondía por los daños reclamados por ser productor de seguros y no un asegurador ni responsable por las acciones u omisiones del Supermercado. También, señaló que el Foro primario carecía de jurisdicción, ya que la Oficina del Comisionado de Seguros (OCS) tenía jurisdicción

---

[8] *Íd.*, Entrada Núm. 27 en SUMAC.
[9] Véase *Sentencia* del caso KLCE202401314.
[10] Entrada Núm. 105 en SUMAC.

primaria exclusiva para atender las violaciones al Código de Seguros, *supra*, mediante la imposición de multas administrativas.

El 1 de mayo de 2025, el señor Márquez Mediavilla presentó una *Moción en Solicitud de Sentencia Sumaria*.[11] Entre otros, argumentó que no existía controversia sobre los hechos materiales y que los daños reclamados en su contra eran inexistentes. Indicó que el único asunto en controversia era si procedía una causa de acción en su contra por quebrantar el principio de buena fe en el cumplimiento de un deber o incurrir en dolo, lo cual negó al afirmar que no tenía deber ni obligación frente a las apelantes. Pues, manifestó que, según el testimonio de la señora Pastrana Ortiz, una empleada del Supermercado le hizo la representación de que él era el encargado de las reclamaciones de seguro por caídas. Asimismo, explicó que las apelantes reconocieron que tramitó su reclamación, la cual no se afectó por ninguna acción u omisión suya y que su derecho a reclamar daños por la caída permaneció intacto. Planteó que, al contrario, fue demandado por el malestar de no recibir respuesta a un correo electrónico.

Posteriormente, el 19 de mayo de 2025, las apelantes presentaron una oposición a la solicitud de sentencia declaratoria.[12] En su escrito, expresaron que el Código de Seguros, *supra*, contemplaba remedios aplicables a los productores, distintos a las multas administrativas. Señalaron que el requisito de acudir a la OCS correspondía únicamente a las aseguradoras y que la doctrina de jurisdicción primaria no procedía cuando no se requería peritaje administrativo. Sostuvieron que, conforme al Artículo 9.020 del Código de Seguros, *supra*, sec. 949a y el *Authorized Representative Agreement* suscrito entre Universal y el apelado, este no tenía autorización para recibir reclamaciones en nombre de la

---

[11] *Íd.*, Entrada Núm. 107 en SUMAC.
[12] *Íd.*, Entrada Núm. 121 en SUMAC.

aseguradora. Por ello, afirmaron que el señor Márquez Mediavilla violó los Artículos 27.050 (5) y 27.150 del Código de Seguros, *supra*, secs. 2704 y 2714a, que reconocían el derecho de indemnización por los daños ocasionados mediante engaño.

El 21 de mayo de 2025, el señor Márquez Mediavilla replicó la oposición a la solicitud de sentencia declaratoria.[13] En síntesis, adujo que, según las apelantes reconocieron bajo juramento, nunca les indicó que atendería su reclamación, sino que remitiría la información del incidente para iniciar el trámite. A esto, añadió que al remitir el relato del incidente a la aseguradora, cumplió con sus responsabilidades y destacó que solamente Universal tenía facultad de atender, adjudicar y resolver las reclamaciones de seguro. Indicó que, aunque el Artículo 27.150 del Código de Seguros, *supra*, sec. 2714a, proveía dos (2) alternativas para presentar reclamaciones por violaciones, estas únicamente aplicaban cuando las cometía la aseguradora y luego de notificarse al Comisionado de Seguros y a la aseguradora.

Ese mismo día, las apelantes presentaron su *Moción en Oposición a Moción en Solicitud de Sentencia Sumaria*.[14] En esta, apuntaron que no procedía la sentencia sumaria, ya que subsistía la controversia sobre si el señor Márquez Mediavilla actuó en contra de sus propios actos al hacerles creer que atendería la reclamación, para lo cual no estaba autorizado, y posteriormente negó su responsabilidad. A su vez, expusieron que seguía en controversia la responsabilidad del señor Márquez Mediavilla al no informarles que carecía de autoridad para atender reclamaciones de Universal ni remitirlas a la persona correspondiente.

---

[13] *Íd.*, Entrada Núm. 128 en SUMAC.
[14] *Íd.*, Entrada Núm. 129 en SUMAC.

Eventualmente, el 5 de junio de 2025, las apelantes solicitaron enmendar la *Demanda* contra Universal.[15] Estas procuraron añadir una causa de acción contra Universal por facilitar el engaño mediante la creación del Departamento de Reclamaciones-Servicios al Productor que les otorgaba discreción a los productores para atender varios trámites de las reclamaciones, en contravención de su contrato con el señor Márquez Mediavilla y del Código de Seguros, *supra*. Afirmaron que esa estructura permitía a los productores recibir únicamente reclamaciones preferenciales en nombre de la aseguradora y evadir otras. A su vez, manifestaron que el contrato otorgaba al apelado la defensa de alegar falta de responsabilidad en el trámite de reclamaciones, reforzando el esquema cuestionado.

El 17 de junio de 2025, el señor Márquez Mediavilla se opuso a la enmienda a la *Demanda* e indicó que las apelantes seguían presentando alegaciones que fueron contradichas mediante prueba documental. Asimismo, subrayó que la enmienda dilataría irrazonablemente los procedimientos y lo obligaría a incurrir en gastos adicionales, puesto que ello implicaría extender el término para concluir el descubrimiento de prueba. Sostuvo que dicha etapa concluyó, ya que las apelantes descartaron tomar deposiciones y las partes habían intercambiado requerimientos de producción de documentos e interrogatorios.

Así las cosas, el 23 de junio de 2025, el Foro *a quo* emitió y notificó una *Sentencia Parcial* mediante la cual declaró Ha Lugar la solicitud de sentencia declaratoria del señor Márquez Mediavilla.[16] En esta, estableció que, en vista de que las apelantes enmendaron la *Demanda* para alegar violaciones al Código de Seguros, *supra*, la OCS era el foro con jurisdicción para atender la controversia. Según indicó, el Comisionado de Seguros era la persona encargada de velar por el

---

[15] *Íd.*, Entrada Núm. 135 en SUMAC.
[16] *Íd.*, Entrada Núm. 142 en SUMAC.

cumplimiento de las disposiciones del Código de Seguros, *supra*, y poseía facultad para fiscalizar y reglamentar la industria de seguros. Por ello, concluyó que carecía de jurisdicción sobre la materia respecto a las controversias relativas al productor, ya que la Asamblea Legislativa delegó en el Comisionado de Seguros la facultad de imponer penalidades por infracciones al Código de Seguros, *supra*.

Ese mismo día, el TPI emitió otra *Sentencia Parcial*, en la que declaró No Ha Lugar la solicitud de sentencia sumaria del señor Márquez Mediavilla al resolver que carecía de jurisdicción sobre la materia.[17] Ello, al entender que la OCS debía atender la controversia relacionada a las violaciones al Código de Seguros, *supra*.

El 25 de junio de 2025, las apelantes presentaron una Moción en *Solicitud de Orden sobre Autorización para Enmendar Demanda en Contra de Universal Conforme a la Prueba*.[18] En esta, peticionaron que el TPI se pronunciara sobre su solicitud de enmienda a la *Demanda* presentada el 5 de junio de 2025. En igual fecha, el Foro *a quo* emitió una *Orden* mediante la cual denegó dicha solicitud.[19]

Más adelante, el 1 de julio de 2025, el señor Márquez Mediavilla presentó un *Memorando de Costas y Solicitud de Honorarios de Abogado por Temeridad*.[20] Expuso que, pese a las gestiones realizadas para evitar el litigio por falta de jurisdicción del Foro primario, se vio obligado a incurrir en gastos para defenderse en un pleito que se desestimó. De esta manera, solicitó que se le concedieran las siguientes partidas: honorarios de abogados por $16,260.00; arancel de comparecencia al TPI por $90.00; arancel de comparecencia ante esta Curia apelativa por $102.00, y gastos de fotocopias por $346.75, para un total de $16,798.75.

---

[17] *Íd.*, Entrada Núm. 143 en SUMAC. Notificada el 24 de junio de 2025.
[18] *Íd.*, Entrada Núm. 144 en SUMAC.
[19] *Íd.*, Entrada Núm. 145 en SUMAC. Notificada el 30 de junio de 2025.
[20] *Íd.*, Entrada Núm. 146 en SUMAC.

El 11 de julio de 2025, las apelantes presentaron su oposición a la *Solicitud de Memorando de Costas y Gastos por Temeridad*.[21] Precisaron que el caso giraba en torno a la caída de la señora Pastrana Ortiz y el proceder engañoso del señor Márquez Mediavilla para que no se atendieran su reclamación de seguros. Adujeron que el apelado ofreció datos falsos de su dirección y se resistió a divulgar su contrato con Universal, lo cual develó un mecanismo para perjudicar a terceros reclamantes y limitar su acceso a la justicia. Afirmaron que ejercieron su derecho a presentar su reclamación judicial conforme las Reglas de Procedimiento Civil, 32 LPRA Ap. V, y que fundamentaron en derecho cada etapa del trámite litigioso. Relataron que el 19 de septiembre de 2024, el TPI rechazó la solicitud de desestimación del apelado por considerar las alegaciones como suficientes, lo que permitió que el descubrimiento de prueba se iniciara el 28 de octubre de 2024. Explicaron que ese proceso fue dilatado por el señor Márquez Mediavilla hasta que Universal finalmente presentó el contrato, tras lo cual el apelado peticionó la desestimación. Sostuvieron que la *Demanda* era necesaria para obtener el contrato. Concluyeron que no se cumplieron los requisitos para imponerles honorarios por temeridad, costas ni gastos.

Subsiguientemente, el 14 de julio de 2025, el señor Márquez Mediavilla replicó a la oposición de las apelantes.[22] En esta, indicó que estas no refutaron ni cuestionaron las partidas solicitadas en el memorando de costas, según lo requería la Regla 44.1 (b) de Procedimiento Civil, *supra,* R. 44.1 (b). Asimismo, puntualizó que la concesión de costas no dependía de una determinación de temeridad, sino que correspondía por haber prevalecido en el pleito.

El 16 de julio de 2025, el TPI emitió una *Resolución* mediante la cual indicó que, toda vez que el señor Márquez Mediavilla

---

[21] *Íd.,* Entrada Núm. 151 en SUMAC.
[22] *Íd.,* Entrada Núm. 152 en SUMAC.

prevaleció, podía reclamar costas por la suma de $16,452.00, suma que reflejaba la deducción de $346.75 correspondiente a fotocopias.

Inconforme, los días 18 y 30 de julio y 8 de agosto de 2025, las señoras Pastrana Ortiz y Rosa Pastrana presentaron sendos recursos de apelación y *certiorari*, en los cuales plantearon que el TPI incurrió en los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ABUSAR DE SU DISCRECIÓN Y DESESTIMAR UNA DEMANDA CON CAUSAS DE ACCIÓN AL AMPARO DEL CÓDIGO CIVIL Y DEL CÓDIGO DE SEGUROS, BAJO EL FUNDAMENTO DE NO TENER JURISDICCIÓN SOBRE LA MATERIA, EN VIOLACIÓN A LA NORMATIVA JURISPRUDENCIAL ESTABLECIDA POR EL TRIBUNAL SUPREMO DE PUERTO RICO EN EL CASO *RIVERA CANDELA Y LOZADA Y UNIVERSAL INSURANCE COMPANY*, 2024 TSPR 99.

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ABUSAR DE SU DISCRECIÓN Y DENEGAR LA SOLICITUD PARA ENMENDAR DEMANDA PRESENTADA SOLO TRES (3) DÍAS DESPUÉS DE DESCUBRIR QUE UNIVERSAL OPERA UN DEPARTAMENTO INTERNO EN VIOLACIÓN A SU CONTRATO CON SUS PRODUCTORES, DEPARTAMENTO QUE FACILITÓ EL ENGAÑO DEL SR. MÁRQUEZ A LAS APELANTES, CONFORME A LAS REGLAS DE PROCEDIMIENTO CIVIL Y SU JURISPRUDENCIA INTERPRETATIVA.

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ABUSAR DE SU DISCRECIÓN E IMPONER COSTAS DE MÁS DE $16,000, SIN FUNDAMENTO EN EL TRACTO PROCESAL, CONFORME A LAS REGLAS DE PROCEDIMIENTO CIVIL Y SU JURISPRUDENCIA INTERPRETATIVA.

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ABUSAR DE SU DISCRECIÓN E IMPONER COSTAS ASCENDENTES A $16,452.00 A UNAS DEMANDANTES DE ESCASOS RECURSOS SIN DETERMINAR TEMERIDAD NI FUNDAMENTAR REQUISITOS JURISPRUDENCIALES Y EN VIOLACIÓN A LA NORMA GENERAL DE QUE LAS COSTAS DE UN LITIGIO NO INCLUYEN HONORARIOS DE ABOGADO.

En esencia, las apelantes señalaron que el caso trataba sobre prácticas ilícitas de una aseguradora y su productor. Indicaron que las causas contra el señor Márquez Mediavilla se basaron en prácticas desleales al amparo de los Artículos 27.050 (5) y 27.150 del Código de Seguros, *supra*, secs. 2704 y 2714a, así como en actos propios bajo el Artículo 15 del Código Civil, 31 LPRA sec. 5334. Lo anterior, al reiterar que el apelado no tenía autorización para recibir reclamaciones, por lo que debía informar tal limitación y dirigirlas a

la persona competente, conforme el Artículo 27.150 del Código de Seguros, *supra,* sec. 2714a.

No obstante, especificaron que el apelado les aseguró y les hizo creer falsamente que era la persona encargada y que atendería la reclamación, contrario a lo dispuesto en su contrato con Universal. Pues, indicaron que el contrato solamente le autorizaba a gestionar seguros mediante solicitación, negociación y venta, no a realizar actos en nombre de Universal. Explicaron que confiaron en esas expresiones, lo que generó una situación contraria a la realidad. Destacaron que el señor Márquez Mediavilla no atendió la reclamación inicial de la caída, motivo por el cual se le envió una reclamación extrajudicial. Expresaron que, al día siguiente, el apelado creó una reclamación a través de un departamento interno ilícito de Universal con la intención de no atenderla, ya que su contrato se lo prohibía, defraudando así su confianza. Ante ello, adujeron que el apelado fue incluido en la *Demanda* por las angustias mentales que causó.

De otro lado, las apelantes señalaron que, si el único remedio contra el señor Márquez Mediavilla era una multa administrativa, el resultado sería contrario a derecho. Alegaron que los Artículos 27.050 (5) y 27.150 del Código de Seguros, *supra,* secs. 2704 y 2714a, no aplicaban solamente a las aseguradoras, sino a cualquier persona. Arguyeron que el TPI tenía jurisdicción para conocer reclamos por prácticas desleales y que la controversia era de carácter contractual, sin necesidad de peritaje administrativo. Subrayaron que el engaño configuró una violación de derechos civiles y que exigir el agotamiento de los remedios administrativos resultaría inútil por la dilación excesiva, ya que el TPI contaba con prueba suficiente y sería una carga excesiva comenzar un pleito nuevo ante sus escasos recursos. Según las apelantes, el requisito de notificar al Comisionado de

Seguros como condición para entablar una acción civil aplicaba únicamente a reclamaciones contra aseguradoras, no a productores.

En cuanto a la enmienda de la *Demanda*, las apelantes apuntaron que habían transcurrido menos de doce (12) meses desde su presentación y que la demora respondió a la resistencia de Universal y del señor Márquez Mediavilla en el descubrimiento de prueba. Indicaron que no fue hasta el 2 de junio de 2025 que el TPI autorizó el acceso al contrato ocho (8) meses después de que lo solicitaron y tras noventa y ocho (98) trámites procesales para ese fin. Señalaron que tras recibir el contrato, el mismo develó que Universal permitía a los productores recibir, presentar, crear y monitorear reclamaciones mediante un departamento interno, en violación del Artículo 9.020 del Código de Seguros, *supra*, sec. 949a y de sus propias disposiciones contractuales. Indicaron que tal diseño permitía que los productores alegaran que no tenían responsabilidad en el trámite de reclamaciones y que Universal evadiera atender reclamaciones de terceros reclamantes.

Respecto a la imposición de honorarios por temeridad, las apelantes sostuvieron que el TPI nunca fundamentó tal determinación, sino que les impuso $16,452.00 como costas. Argumentaron que únicamente correspondían $90.00 por las alegaciones responsivas en el TPI, ya que prevalecieron en el recurso apelativo. Señalaron que quienes actuaron temerariamente fueron el señor Márquez Mediavilla y Universal, al negarse a presentar el contrato en el descubrimiento de prueba. También, expresaron que el caso representaba una controversia novel, puesto que el Tribunal Supremo aún no se había pronunciado sobre si un productor de seguros podía atender reclamaciones.

El 30 de julio de 2025, el señor Márquez Mediavilla solicitó la desestimación del recurso TA2025AP00152 al indicar que las apelantes solicitaron revisar dos (2) sentencias y dos (2) resoluciones

interlocutorias en un solo recurso, lo que, a su entender, usurparía nuestra facultad discrecional de atender los recursos de *certiorari*. El 5 de septiembre de 2025, las apelantes se opusieron e indicaron que, oportunamente, presentaron los recursos de *certiorari* por separado. Así las cosas, el 8 de septiembre de 2025, este Tribunal emitió una *Resolución* en la que se declaró No Ha Lugar la *Solicitud de Desestimación* presentada por el apelado.

Así las cosas, el 29 de septiembre de 2025 el señor Márquez Mediavilla presentó su alegato en el que reiteró que, como productor, no le aplicaba el Artículo 27.164 del Código de Seguros, *supra*, sec. 2716d. Por ello, indicó que la reclamación instada en su contra bajo el Código de Seguros, *supra*, era improcedente y debía ventilarse ante la OCS, de modo que el TPI carecía de jurisdicción sobre la materia. Asimismo, indicó que el Artículo 27.050 del Código de Seguros, *supra*, sec. 2704, se refería exclusivamente a aquellos anuncios engañosos sobre los términos o beneficios de una póliza, por lo que no guardaba relación con la conducta, las obligaciones y los deberes de un productor. Precisó que no emitió póliza alguna, no era el propietario del Supermercado, ni estuvo relacionado con la caída, por lo que no tenía obligación alguna con las apelantes ni procedía responder solidariamente por los daños alegados. También, expuso que las apelantes no colocaron a esta Curia en posición de revisar si el TPI abusó de su discreción al imponer costas y honorarios.

## II.

### A. Jurisdicción

La jurisdicción es el poder o la autoridad de un tribunal para considerar y decidir casos y controversias. *Muñoz Barrientos v. ELA et al.*, 212 DPR 714, 726 (2023); *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385-386 (2020). En Puerto Rico, los tribunales poseen jurisdicción general para atender cualquier causa de acción, salvo

que carezcan de jurisdicción sobre la materia. *Beltrán Cintrón et al. v. ELA et al.,* 204 DPR 89, 101 (2020).

La jurisdicción sobre la materia consiste en la capacidad para atender y resolver una controversia, la cual puede ser limitada por disposición legislativa. *Íd., citando a* J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, Colombia, Ed. Nomos, 2010, pág. 25. La doctrina de jurisdicción primaria es una norma de autolimitación judicial para determinar el foro con jurisdicción original sobre un asunto. *MCS Advantage v. Fossas Blanco et al.,* 211 DPR 135 (2023). Cuando la Asamblea Legislativa establece que un foro administrativo tiene jurisdicción sobre un asunto, los tribunales quedan impedidos de intervenir en primera instancia. *Íd.* Esta doctrina tiene dos (2) vertientes: la jurisdicción primaria concurrente y la jurisdicción primaria exclusiva. *Íd.*

La jurisdicción primaria concurrente presupone que la ley permite presentar la reclamación tanto ante la agencia como ante el tribunal. *Beltrán Cintrón et al. v. ELA et al., supra,* pág. 102. A tales efectos, los tribunales suelen ceder la primacía al foro administrativo por su conocimiento especializado. *Íd.* En cambio, la jurisdicción primaria exclusiva surge cuando la ley confiere expresamente a la agencia la autoridad inicial para dilucidar la controversia. *MCS Advantage v. Fossas Blanco et al., supra.* Una vez la agencia emite su determinación final, la parte afectada puede acudir a revisión judicial. *Íd.* Quien intente eludir el trámite administrativo debe demostrar que el mismo resulta inútil, inefectivo, proveería un remedio inadecuado o que causaría un daño irreparable e inminente. *Beltrán Cintrón et al. v. ELA et al., supra,* pág. 115. Tales alegaciones deben sustentarse con prueba adecuada, ya que meras alegaciones o conjeturas son insuficientes. *Moreno Ferrer v. JRCM,* 209 DPR 430 (2022).

La falta de jurisdicción es insubsanable, priva al tribunal de facultad para adjudicar una controversia y torna nula cualquier

sentencia emitida. *Allied Mgmt. Group v. Oriental Bank, supra,* pág. 386. Por ello, un foro judicial tiene el deber indelegable de examinar, en primera instancia, su jurisdicción en todo caso, ya que no puede asumirla donde no existe ni las partes pueden conferirla. *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 500 (2019).

Así las cosas, el Artículo 2.030 (14) del Código de Seguros, *supra,* sec. 235, dispone que el Comisionado de Seguros tiene la facultad de adjudicar controversias sobre violaciones al Código y de dictar los remedios correspondientes. Sin embargo, la Asamblea Legislativa promulgó la Ley Núm. 247-2018, la cual añadió el Artículo 27.164 del Código de Seguros, *supra,* sec. 2716d para crear una causa de acción adicional y reparadora contra las aseguradoras por daños derivados de violaciones a dicho cuerpo legal. *Rivera, Lozada v. Universal,* 214 DPR 1007 (2024); *Consejo Titulares v. MAPFRE,* 208 DPR 761 (2022). La referida disposición establece que:

> (1) Cualquier persona podrá incoar una acción civil contra una aseguradora de haber sufrido daños a consecuencia de:
> a. Violaciones por parte de las aseguradoras bajo cualesquiera de las siguientes disposiciones de esta Ley:
> i. Artículo 11.270. — Limitación de cancelación por el asegurador.
> ii. Artículo 27.020. — Competencia desleal; prácticas injustas y engañosas, prohibidas.
> iii. Artículo 27.030. — Tergiversación, prohibida.
> iv. Artículo 27.040. — Obligación de informar cubierta; copia de póliza.
> v. Artículo 27.050. — Anuncios.
> vi. Artículo 27.081. — Prácticas prohibidas en los seguros de propiedad.
> vii. Artículo 27.130. — Diferenciación injusta, prohibida.
> viii. Artículo 27.141. — Designación de agente o asegurador favorecido; coerción de deudores.
> ix. Artículo 27.150. — Notificación de la reclamación.
> x. Artículo 27.160. — Tráfico ilegal de primas.
> xi. Artículo 27.161. — Prácticas desleales en el ajuste de reclamaciones.
> xii. Artículo 27.162. — Término para la resolución de reclamaciones.
> b. Por la comisión de cualesquiera de estos actos por las aseguradoras cubiertas bajo esta Ley:
> i. No intentar resolver de buena fe las reclamaciones cuando, bajo un análisis de la totalidad de las circunstancias, podría y debería haberlo hecho, así como cuando no actúa justa y honestamente hacia su asegurado y en consideración de sus intereses;
> ii. Realizar pagos de reclamaciones a asegurados o beneficiarios que no vayan

acompañados de una declaración escrita que establezca la cubierta bajo qué se están realizando los pagos; o

iii. Al no resolver las reclamaciones con prontitud, cuando sea clara la responsabilidad de la aseguradora bajo los términos de una de las secciones de cubierta de la póliza de seguro con el fin de influir en los asentamientos bajo otras porciones o secciones de la cubierta bajo la póliza de seguro.

Una persona, según es definida en el Artículo 1.040 de esta Ley, que presente una acción civil en virtud de Apartado (1) de este Artículo, no necesita probar que tales actos fueron cometidos o realizados con tal frecuencia como para indicar una práctica comercial general.

[...]

(3) Como condición previa a entablar una acción bajo las disposiciones de este Artículo, la parte afectada deberá notificar por escrito al Comisionado y a la aseguradora de la violación. La Aseguradora tendrá un término de sesenta (60) días para remediar la misma. El Comisionado, de entender que la notificación por escrito es insuficiente o vaga, devolverá la misma y el término de sesenta (60) días no comenzará a cursar hasta tanto se subsane la deficiencia identificada por el Comisionado.

a. Dicha notificación deberá hacerse en un formulario oficial a ser provisto por el Comisionado y deberá contener la siguiente información así como cualquier otra información que el Comisionado, a su discreción, entienda necesario [...]:

i. Citar el Artículo o Sección bajo la cual se imputa una violación y una cita del lenguaje incluido bajo dicho Artículo o Sección que se alega fue infringido por la aseguradora.

ii. Una relación de hechos que dieron pie a la violación.

iii. El nombre de la persona o entidad involucrada en la violación.

iv. Referencia al lenguaje bajo las cubiertas de la póliza que sea relevante bajo la violación alegada. Si la persona que presenta la reclamación es un tercero, no se le pedirá que haga referencia al lenguaje específico de la póliza si la aseguradora autorizada no ha proporcionado una copia de la póliza al reclamante, luego de este haberla solicitado por escrito.

v. Una declaración de que la notificación se entrega con el fin de perfeccionar el derecho a buscar el recurso civil autorizado por esta Sección.

[...]

e. Una notificación bajo este Artículo, así como cualquier otra notificación subsiguiente, interrumpirá por sesenta y cinco (65) días, desde la fecha del depósito en el correo de la notificación, cualquier término prescriptivo para incoar acciones en los tribunales.

(4) En caso de adjudicación adversa en el juicio o luego de una apelación, el asegurador autorizado será responsable de los daños, junto con costos judiciales y honorarios razonables de abogados incurridos por el demandante.

[...]

(6) **El recurso civil especificado en este Artículo no sustituye cualquier otro recurso o causa de acción prevista en virtud de cualquier otro estatuto o de conformidad con las leyes de Puerto Rico o las leyes federales aplicables. Cualquier persona podrá reclamar bajo las disposiciones generales referente a materia de contratos o derecho extracontractual o daños y perjuicios,**

**según contemplados en el Código Civil de Puerto Rico. Sin embargo, los tribunales o foros adjudicativos están impedidos de procesar y adjudicar ambos recursos o causas de acción.** Los daños recuperables de conformidad con este Artículo incluirán aquellos daños que son un resultado razonablemente previsible de una violación específica de este Artículo por la aseguradora autorizada y puede incluir una adjudicación o juicio por un monto que exceda los límites de la póliza. Art. 27.164 del Código de Seguros, *supra*, sec. 2716d. (Énfasis nuestro).

A saber, existe un requisito jurisdiccional de notificación al Comisionado de Seguros como condición previa y necesaria para presentar una acción al amparo del Artículo 27.164 del Código de Seguros, *supra*, sec. 2716d. *Rivera, Lozada v. Universal, supra.* De incumplirse con tal requisito, los tribunales carecen de jurisdicción para atender la reclamación. *Íd.* Ahora bien, dicha acción bajo el Código de Seguros no es exclusiva, ya que puede coexistir con una causa de acción bajo el Código Civil. *Consejo Titulares v. MAPFRE, supra.* Sin embargo, no procede la duplicidad de remedios, por lo que la persona perjudicada deberá optar por cuál causa de acción obtendrá la reparación satisfactoria de sus daños, según se desprenda de las alegaciones y la prueba presentada. *Íd.*

En *Rivera, Lozada v. Universal, supra*, págs. 1030-1032, el Tribunal Supremo precisó el procedimiento aplicable ante una solicitud de desestimación de una demanda que pudiera sustentarse en ambas causas de acción —una bajo el Código de Seguros y otra bajo el Código Civil—. Primero, el tribunal debe dar por ciertos los hechos correctamente alegados e interpretarlos liberalmente a favor del demandante. *Íd.* Si de ese examen surge una causa de acción bajo el Código de Seguros, *supra*, debe verificar el cumplimiento con el requisito jurisdiccional de notificación, el cual, de incumplirse, conllevaría la desestimación de tal causa. *Íd.* Luego, debe evaluar si las alegaciones sostienen una reclamación válida al amparo del Código Civil, *supra*, y de ser así, no procede la desestimación total y el caso debe continuar respecto a esa causa. *Íd.*

Este proceder responde a la política pública de que los casos se vean en sus méritos y al principio de que no es necesario identificar con precisión la fuente jurídica invocada. *Íd.* Además, el propio Artículo 27.164 del Código de Seguros, *supra,* sec. 2716d, reconoce la coexistencia de otras causas. *Íd.* Por tanto, si las alegaciones superan el estándar de la moción de desestimación, el tribunal debe permitir que el demandante presente su prueba para seleccionar la causa de acción que finalmente sostendrá su remedio. *Íd.*

### B. Prácticas desleales

De ordinario, una aseguradora responde hasta el límite de responsabilidad pactado en la póliza. *Consejo Titulares v. MAPFRE,* 208 DPR 761, 774 (2022). No obstante, puede ser responsable por el exceso cuando actúa contrario al pacto implícito de buena fe y antepone sus intereses sobre los del asegurado, conducta considerada como práctica desleal o fraudulenta. *Íd.*

El Capítulo 27 del Código de Seguros, *supra,* regula y prohíbe los actos desleales o engañosos en el negocio de seguros. *Íd.* Al respecto, el Artículo 27.020 del Código de Seguros, *supra,* sec. 2702, dispone que ninguna persona se dedicará en Puerto Rico a ningún acto o práctica prohibida en el capítulo o que se defina en el mismo como método desleal de competencia o práctica injusta o engañosa en la industria de seguros.

Por otro lado, el Artículo 27.050 (5) del Código de Seguros, *supra,* sec. 2704, prohíbe a toda persona hacer o divulgar, por cualquier medio, información, asunto, declaración o cualquier tipo de comunicación o expresión con una aseveración, representación o declaración falsa, falaz o engañosa sobre el negocio de seguros o a una persona en el manejo de su negocio de seguros. A su vez, el Artículo 27.150 del Código de Seguros, *supra,* sec. 2714a, dispone que la aseguradora debe acusar recibo de una reclamación dentro de los quince (15) días siguientes a su notificación. Si quien la recibe no

está autorizado, deberá informar al reclamante en un término de siete (7) días e indicar la persona y dirección correctas para remitir la notificación. *Íd.* La violación a esta disposición puede conllevar sanciones administrativas. *Íd.*

### C. Doctrina de los actos propios

La doctrina de los actos propios emana del principio general de derecho que exige obrar de buena fe. *Domenech v. Integration Corp. et al.,* 187 DPR 595, 621 (2013); *Santiago et al. v. Rodríguez et al.,* 181 DPR 204, 217 (2011). Pues, a nadie le es lícito obrar en contra de sus propios actos. *Íd.* Esta doctrina procura evitar conductas contradictorias con actuaciones previas que hayan generado una expectativa en otra persona que confió mediante ese obrar. *Íd.* Además, protege la confianza depositada, el interés social y el ideal de justicia. *Carmona Sánchez et als. v. Baloncesto Superior Nacional et als.,* 214 DPR 388 (2024); *Alonso Piñero v. UNDARE, Inc.,* 199 DPR 32, 55 (2017). Para su aplicación, deben concurrir tres (3) elementos: (1) una conducta determinada de un sujeto; (2) que generó una situación contraria a la realidad, susceptible de influir en la conducta de otro, y (3) que fue la base de la confianza de otra parte que, de buena fe, obró en consecuencia y sufriría un perjuicio si su confianza se defrauda. *Vivoni Farage v. Ortiz Carro,* 179 DPR 990, 1010-1011 (2010); *Int. General Electric v. Concrete Builders,* 104 DPR 871, 878 (1976).

### D. Alegaciones enmendadas

La Regla 13.1 de Procedimiento Civil, *supra,* R. 13.1, permite enmendar alegaciones para aclarar o ampliar reclamaciones o defensas. J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Publicaciones JTS, 2011, T. II, pág. 591. Dicha regla dispone lo siguiente:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva, o si su alegación es de las que no admiten

> alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la justicia así lo requiera. La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal de otro modo lo ordene. Regla 13.1 de Procedimiento Civil, *supra*, R. 13.1.

De lo anterior se desprende que existen dos (2) escenarios que viabilizan la enmienda de una alegación, los cuales dependen del momento procesal en que se presenta: cuando no requiere permiso del tribunal y cuando lo requiere J. A. Echevarría Vargas, Procedimiento Civil Puertorriqueño, 3ra ed., Colombia, Editorial Nomos, S.A., 2023, pág. 161; Cuevas Segarra, *op. cit.*, pág. 598. En primer lugar, una parte puede enmendar sus alegaciones sin permiso del tribunal antes de que se le notifique una alegación responsiva. *Íd.* Si la alegación no admite respuesta, podrá enmendarse libremente dentro de los veinte (20) días siguientes a su notificación. *Íd.* Transcurrido dicho término, o una vez se haya presentado una alegación responsiva, podrá enmendarse con la autorización del tribunal o consentimiento escrito de la parte contraria. *Íd.*

La autorización para enmendar las alegaciones se debe conceder liberalmente en aras de que los casos se ventilen en sus méritos, aunque dicha decisión descansa en la discreción del tribunal. *Íd.*; *SLG Font Bardón v. Mini-Warehouse*, 179 DPR 322, 334 (2010); *SLG Sierra v. Rodríguez*, 163 DPR 738, 745 (2005). No obstante, esta discreción debe guiarse por varios criterios: (1) el momento en que se solicita la enmienda; (2) su impacto en la adjudicación de la controversia; (3) la razón de la demora; (4) el prejuicio a la otra parte y (5) la naturaleza y los méritos de la defensa que se plantea. *Íd.*; *Epifanio Vida Inc. v. Suro*, 103 DPR 793, 796

(1976); *Colón Rivera v. Wyeth Pharm.*, *supra*, pág. 199. El criterio determinante es el potencial perjuicio a la parte contraria, que se configura cuando la enmienda altera radicalmente el alcance y la naturaleza del caso, convirtiendo la controversia inicial en tangencial, o cuando obliga a la otra parte a incurrir en nuevos gastos, modificar su estrategia o reiniciar el descubrimiento de prueba. J. A. Echevarría Vargas, *op cit*, pág. 162.

Además, el tribunal puede denegar una enmienda cuando se presenta en un momento irrazonable o resulta fútil, es decir, carente de propósito legítimo o mérito legal. *Colón Rivera v. Wyeth Pharm.*, *supra*; J. Cuevas Segarra, *op. cit.*, pág. 595-600. No obstante, un cambio de teoría, la etapa procesal avanzada o el mero transcurso del tiempo, por sí solos, no son suficientes para denegar una enmienda. *Íd.*, pág. 594; *SLG Sierra v. Rodríguez, supra*, pág. 748. Por último, un foro apelativo puede revocar la determinación del tribunal de instancia ante un claro abuso de discreción o perjuicio manifiesto. J. Cuevas Segarra, *op. cit.*, pág. 591; *Colón Rivera v. Wyeth Pharm.*, *supra*; *SLG Font Bardón v. Mini-Warehouse, supra*.

### E. Costas y honorarios de abogados

La Regla 44.1 de Procedimiento Civil, *supra*, R. 44.1, regula la imposición de costas y honorarios de abogados. En cuanto a las costas, establece que se concederán a la parte prevaleciente los gastos necesarios y razonables incurridos en el litigio, salvo una ley especial o las propias reglas procesales dispongan lo contrario. Aunque su imposición es automática cuando se reclaman, la parte debe presentar y notificar oportunamente un memorando de costas que detalle las partidas y los desembolsos necesarios incurridos durante la tramitación del pleito. *ELA v. El Ojo de Agua Development,* 205 DPR 502 (2020); *Rosario Domínguez et als. v. ELA et al.,* 198 DPR 197, 211 (2017); *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 934 (2012); *Colondres Vélez v. Bayron Vélez*, 114 DPR 833, 839

(1983). Igualmente, el inciso (c) de la regla, *supra*, dispone que la parte a cuyo favor un tribunal apelativo emitió una sentencia, presentará el memorando de costas al Tribunal de Primera Instancia que conoció el caso originalmente.

Por otra parte, el inciso (d) de la Regla 44.1 de Procedimiento Civil, *supra*, R. 44.1 (d), faculta al tribunal a imponer honorarios de abogado cuando una parte procedió con temeridad durante el litigio. *Pereira v. IBEC*, 95 DPR 28 (1967). La temeridad se define como una conducta terca, obstinada, contumaz y carente de fundamento que obliga a la parte contraria a asumir los gastos y el esfuerzo de un litigio que pudo evitarse o que se prolongó innecesariamente. *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010); *SLG Flores-Jiménez v. Colberg*, 173 DPR 843, 866 (2008). Ello, salvo que la controversia planteada implique una cuestión de derecho novedosa. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta. ed., Lexisnexis de Puerto Rico, San Juan, 2017, pág. 437. Empero, el hecho de que un asunto no se haya planteado previamente no implica falta de temeridad si la ley aplicable es clara. J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Publicaciones JTS, 2011, T. IV, pág. 1312.

El propósito de esta sanción es desalentar litigios infundados y promover la resolución de controversias, mediante un mecanismo que compense a la parte prevaleciente por los perjuicios económicos y las cargas generadas por la actitud irrazonable de su contraparte. *Marrero Rosado v. Marrero Rosado, supra.* Además, castiga a quien, por su actitud inflexible, obliga a la otra a incurrir en los inconvenientes de un pleito. *Torres Vélez v. Soto Hernández*, 189 DPR 972, 993 (2013); *COPR v. SPU*, 181 DPR 299 (2011). La determinación de temeridad recae en la sana discreción del juzgador, sujeta a revisión apelativa en caso de abuso de discreción. *COPR v. SPU, supra*; *SLG Flores-Jiménez v. Colberg, supra.*

**III.**

En este caso, las señoras Pastrana Ortiz y Rosa Pastrana alegaron que el TPI erró al desestimar la *Demanda* en su totalidad bajo el fundamento de falta de jurisdicción, a pesar de que subsistía una causa de acción bajo la doctrina de los actos propios; denegar la solicitud para enmendar la *Demanda* contra Universal, e (3) imponer $16,452.00 por concepto de costas y honorarios de abogado sin realizar un análisis sobre la temeridad.

Tras una evaluación sosegada del expediente, concluimos que les asiste la razón a las apelantes. Del expediente surge que el TPI desestimó la *Demanda* contra el señor Márquez Mediavilla en su totalidad al entender que la OCS tenía jurisdicción primaria exclusiva sobre las reclamaciones por violaciones al Código de Seguros, *supra.* Sin embargo, el Foro primario omitió considerar lo dispuesto en el Artículo 27.164 del referido Código de Seguros, *supra,* sec. 2716d y en el caso *Rivera, Lozada v. Universal, supra.* El TPI debía tomar por ciertos los hechos bien alegados y evaluar si se sostenía una causa bajo el Código de Seguros, *supra,* o bajo el Código Civil, *supra.* Si las alegaciones sostenían ambas causas de acción, dicho Foro debía permitir que las apelantes presentaran evidencia para seleccionar la que finalmente mantendría su remedio. Es meritorio recordar que la reclamación por la doctrina de los actos propios contra el señor Márquez Mediavilla era una acción de índole civil que no dependía del conocimiento técnico o peritaje de la OCS. Al desestimar por completo la *Demanda* contra el apelado, el Foro *a quo* privó a las señoras Pastrana Ortiz y Rosa Pastrana del acceso al foro judicial, en contravención de la política pública de que los casos se vean en sus méritos.

En cuanto a la denegatoria de la solicitud de enmendar la *Demanda* contra Universal, presentada el 5 de junio de 2025, el TPI abusó de su discreción. Si bien Universal ya había presentado su

alegación responsiva, por lo que la enmienda requería autorización judicial, la misma debía concederse por la justicia así requerirlo. El tribunal debía evaluar, entre otros factores, el momento en que se solicitó, el impacto sobre la adjudicación de la controversia, la razón de la demora, el perjuicio a la otra parte y la naturaleza de la defensa. En este caso, las apelantes solicitaron enmendar su *Demanda* apenas tres (3) días después de obtener el contrato entre Universal y el señor Márquez Mediavilla, documento que no tuvieron acceso hasta el 2 de junio de 2025 pese a múltiples solicitudes durante meses. Tal solicitud fue, por ende, oportuna y debidamente fundamentada, pues el contrato revelaba información potencialmente relevante sobre una estructura interna de Universal que, de probarse, podría tener consecuencias jurídicas en la controversia. Además, no se demostró perjuicio indebido a la parte contraria ni que la enmienda alterara sustancialmente la naturaleza del caso o dilatara irrazonablemente los procedimientos. Por tanto, la negativa del TPI en permitir la enmienda fue contraria al principio de que las controversias se resuelvan en sus méritos, por lo que procede revocar dicha determinación.

Por último, en cuanto a la imposición de costas por la suma de $16,452.00 a favor del apelado, el Foro *a quo* erró al conceder dicha partida sin realizar un análisis sobre temeridad. Es norma reiterada que las costas comprenden los gastos necesarios y razonables incurridos en la tramitación del pleito y **no** incluyen los honorarios de abogado. Erradamente, el TPI adjudicó una suma global que incluía honorarios de abogados sin realizar una determinación sobre temeridad ni fundamentar su razonamiento sobre dicho particular. No obstante lo anterior, en consideración a lo resuelto por este Tribunal en los presentes recursos, se deja sin efecto la imposición de las costas a favor del señor Márquez Mediavilla.

En virtud de lo anterior, se revocan todas las determinaciones emitidas por el Foro primario, aquí apeladas y recurridas. Se ordena al TPI celebrar una vista para determinar, a la luz de las alegaciones y la prueba presentada, cuál causa de acción subsistirá, ya sea la del Código de Seguros, *supra*, o la del Código Civil, *supra*.

## IV.

Por los fundamentos que anteceden, se revocan tanto la *Orden* como la *Resolución* recurridas, así como ambas *Sentencias Parciales* apeladas.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones